590 A.2d 352

**Kerry DIBBLE**

v.

**SECURITY OF AMERICA LIFE INSURANCE COMPANY and the People's State Bank.**

**Appeal of SECURITY OF AMERICA LIFE INS. CO., Appellant.**

Superior Court of Pennsylvania.

Argued April 4, 1991.

Filed May 2, 1991.

Joseph J. Heston, Kingston, for Sec. of America Life Ins., appellant.

Gerald A. Kinchy, Sayre, for Dibble, appellee.

Before JOHNSON, HUDOCK and CERCONE, JJ.

JOHNSON, Judge:

Kerry Dibble brought this suit against Security of America Life Insurance Company (Security of America), and the Peoples State Bank, seeking to recover the proceeds of a mortgage life insurance policy issued by Security of America on the life of David Dibble, Kerry Dibble's deceased husband. Security of America appeals from the order dated July 12, 1990, granting Kerry Dibble's motion for summary judgment. We affirm.

When reviewing the entry of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or a manifest abuse of discretion. *Brecher v. Cutler*, 396 Pa.Super. 211, 578 A.2d 481 (1990). To uphold summary judgment, not only must there be an absence of genuine factual issues, but also an entitlement to judgment as a matter of law. The trial court must examine the record in the light most favorable to the non-moving party and accept as true all the well pleaded facts in the non-moving party's pleadings. *Id.,*

396 Pa.Superior Ct. at 216, 578 A.2d at 484. Pa.R.C.P. 1035(b). Examining the record in the light most favorable to Security of America, the following facts are clear:

In July 1986, Kerry Dibble and her now deceased husband, David Dibble, purchased mortgage life insurance from Security of America, through its agent, the Peoples State Bank. The application for the insurance policy was completed and signed by the Dibbles on July 11, 1986. The application contained the following language:

> THE INSURANCE APPLIED FOR WILL BECOME EFFECTIVE ON THE FIRST OF THE MONTH FOLLOWING APPROVAL OF THE APPLICATION BY THE COMPANY IF THE APPLICATION IS APPROVED BY THE 20TH OF THE MONTH. IF APPROVED AFTER THE 20TH OF THE MONTH, THEN THE INSURANCE WILL BECOME EFFECTIVE ON THE FIRST OF THE SECOND MONTH FOLLOWING APPROVAL. The Company reserves the right to require medical examinations.

On August 11, 1986, the Peoples State Bank, acting as agent for Security of America, accepted from the Dibbles the first premium payment for the mortgage life insurance. This payment was included within the Dibbles' monthly mortgage payment. The Dibbles continued to pay the same monthly premium each month thereafter for the mortgage life insurance. On September 8, 1986, the application for the insurance policy was formally approved by Security of America. The policy included the same provision that was included in the application:

> The insurance applied for will become effective on the first of the month following approval of the application by the Company if the application is approved by the 20th of the month. If approved after the 20th of the month, then the insurance will become effective on the first of the second month following approval.

In addition, the policy contained the following provision:

## SUICIDE

If an Insured Mortgagor, whether sane or insane, shall die by suicide while insured hereunder, it is the intent of the Company to pay only the amount of insurance, or portion thereof, which has been in force for more than two years from its effective date. Any premium contributed by the Insured Mortgagor for any insurance benefit which is denied due to this limitation shall be returned by the Company.

On September 28, 1988, two years and forty-seven days after the the first insurance premium was paid, David Dibble committed suicide. Thereafter, Kerry Dibble made a claim for the insurance proceeds. Security of America denied the claim alleging that David Dibble died within two years of October 1, 1986, the "effective date" of coverage. Security of America reasoned that since the Dibbles' application was approved on September 8, 1986, David Dibble's coverage became effective on the first of the month following approval of the application, or on October 1, 1986. *See* Reproduced Record, pages 11(a), 14(a), 20(a).

Kerry Dibble filed a complaint against Security of America on May 1, 1989. After the close of the pleadings and discovery, motions for summary judgment were filed by Security of America and People's State Bank. A cross-motion for summary judgment was also filed by Kerry Dibble. By order dated July 12, 1990, the court granted Kerry Dibble's motion for summary judgment against Security of America, and denied the motions of both Security of America and the People's State Bank. Security of America raises the following issue on appeal:

DOES A BENEFICIARY UNDER A LIFE INSURANCE POLICY HAVE THE RIGHT TO RECOVER PROCEEDS FROM THE INSURER WHEN THE APPLICATION CLEARLY STATED THAT THE POLICY WOULD NOT BECOME EFFECTIVE UNTIL AFTER APPROVAL BY THE COMPANY, BUT THE INSURED SUBMITTED PREMIUMS PRIOR TO THE EFFECTIVE DATE, AND THE LOSS RESULTED FROM THE SUICIDE OF THE

INSURED WITHIN A PROHIBITED PERIOD MEA-
SURED FROM THE EFFECTIVE DATE, BUT OUT-
SIDE THE PERIOD MEASURED FROM THE DATE
THE FIRST PREMIUM WAS PAID?

Security of America argues that an insurance policy, when issued, embodies a contract and if the language of the contract is clear and unambiguous, the court is required to give effect to that language. *Citing Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.*, 426 Pa. 453, 233 A.2d 548 (1967). Security of America contends that each of the above-quoted provisions of the application and policy are not ambiguous and must be given their plain and ordinary meaning. Therefore, Security of America argues, since David Dibble's death occurred within two years of October 1, 1986, the "effective date" of coverage as defined in the application and policy, Kerry Dibble is not entitled to the policy proceeds. We do not agree.

■ Our Supreme Court has indicated that the proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55; *Tonkovic v. State Farm Mutual Automobile Insurance Co.*, 513 Pa. 445, 521 A.2d 920 (1987). Courts must examine the totality of the insurance transaction involved to ascertain the reasonable expectations of the consumer. *Collister, supra*, 479 Pa. at 593, 388 A.2d at 1354, *Tonkovic, supra*, 513 Pa. at 456–457, 521 A.2d at 926.

In *Collister*, subsequent to paying the first premium for a life insurance policy, the insured received a receipt which stated:

NO INSURANCE WILL BECOME EFFECTIVE PRIOR
TO POLICY DELIVERY UNLESS THE ACTS RE-
QUIRED BY THIS RECEIPT ARE COMPLETED. NO
AGENT OF THE COMPANY IS AUTHORIZED TO
CHANGE ANY ACT REQUIRED.

*Id.* 479 Pa. at 599, 388 A.2d at 1356. At the time of the consumer's death, the insurance company had neither issued the policy applied for, nor had it rejected the application. *Id.*, 479 Pa. at 582, 388 A.2d at 1347. In addition, the consumer had not taken the medical examination required by the wording of the application. *Id.* Despite the unambiguous language set forth in the document, the *Collister* court held that the policy commenced upon the first premium payment, stating:

In situations where the circumstances of the transaction do not indicate that the insurer intended to provide interim insurance, but nevertheless show that the insurer accepted payment of the first premium at the time it took the application, *it is then up to the insurer to establish by clear and convincing evidence that the consumer had no reasonable basis for believing that he or she was purchasing immediate insurance coverage.*

The reasonable expectation of the insured is the focal point of the insurance transaction involved here.... Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid.

*Id.*, 479 Pa. at 594, 388 A.2d at 1353. (Emphasis ours). Security of America argues that the unambiguous language of the application and policy gave notice to the Dibbles that no insurance was to take effect until the "first day of the month following approval." Appellant's Brief at page 11. Therefore, Security of America contends that the Dibbles had no reasonable basis to believe that they were purchasing immediate coverage. Applying the holding of *Collister* to the facts of the instant case, we must not focus on the language of the application and policy, rather our conclusion is determined by the dynamics of the transaction

viewed in its entirety. *Collister, supra,* 479 Pa. at 593, 388 A.2d at 1354.

In the instant situation, the Dibbles could have reasonably believed that when they paid the first premium on August 11, 1986, that the mortgage life insurance policy became effective at that time. By simply directing us to unambiguous language in the application and policy, Security of America has not established by clear and convincing evidence that the Dibbles were unreasonable in believing that coverage began upon their payment of the first premium. The *Collister* court held that only after an *unequivocal showing that the consumer is to be given no immediate benefits in return for his premium prepayment,* can it be said that the insurer has sustained its burden. *Id.,* 479 Pa. at 598, 388 A.2d at 1355. (Emphasis ours). Our Supreme Court stated:

> If ... the insurer wishes to enjoy the substantial benefits it receives by securing the customer's cash at the time of the taking of the application, it must return what the consumer can reasonably expect that the insurer is selling: i.e., immediate coverage.

*Id.* The *Collister* court held that alternatively, the insurer could inform the applicant, before any money changes hands, that it does not intend to give the customer anything in return for the premium pre-payment, and that the customer is actually paying for nothing. The court further held that:

> ... [A]ny such notice must be made in a manner calculated to bring the facts of the transaction—that the customer is paying money now, but getting nothing until later— to the customer's attention in no uncertain terms. As such, the notice could not be printed on a receipt.

*Id.* A review of the record reveals that Security of America made no effort to notify the Dibbles, beyond the notice printed on the application and policy, that they were making advance premium payments but getting nothing in return. According to *Collister,* such notice did not amount to an "unequivocal showing" that the Dibbles were not receiving

immediate benefits in return for their premium pre-payment.

Relying upon the federal district court case, *Oakes v. Franklin Life Ins. Co.*, 516 F.Supp. 445 (E.D.Pa.1981), Security of America argues that *Collister* has no application to the instant case. The *Oakes* case involved a factual situation similar to the instant case. In *Oakes,* the insured completed the insurance application and paid the first premium deposit on August 10, 1977. At that time the insurer provided temporary or interim coverage pending its decision to reject the application or issue a policy. On August 24, 1977, the insurer approved the application and issued a policy bearing an issue date of August 24, 1977. *Oakes, supra,* at 446. Under the heading "Payment of Benefits," the policy provided as follows:

> Suicide: If within two years from the date of issue the insured (whether sane or insane) shall die by suicide, this policy shall automatically terminate and the amount payable in lieu of all other benefits shall be limited to the premiums paid.

*Id.* On August 18, 1979, the insured died by suicide. The issue before the court on cross-motions for summary judgment was whether the date of issue referred to in the suicide clause was the date of issue on the policy, August 24, 1977, or the date on which the insured paid his first premium payment and was given temporary or interim coverage.

The *Oakes* court distinguished the Pennsylvania Supreme Court decision in *Collister,* holding that:

> That case [*Collister*] did not involve a suicide but an accidental death. Furthermore, it [*Collister*] was only concerned with coverage during the interim period between application and issuance of the policy and not with the terms of the policy once issued or with its date of issue.

*Id.* at 447. Finding no ambiguity in the insurance policy language, the *Oakes* court granted the insurer's motion for summary judgment.

We note, that a federal court's interpretation of state law does not bind this court. *See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state courts are the principal expositors of state law). Not only does the *Oakes* court ignore the reasonable expectations test set forth in *Collister*, it also purports to restrict *Collister's* application to cases 1) which involve accidental deaths; and 2) which involve issues of coverage during the interim period between application and issuance of the policy. This is not what the *Collister* court intended, nor is it what Pennsylvania courts have consistently held since the decision was filed in 1977. *See e.g., Tonkovic v. State Farm Mutual Automobile Insurance Co., supra,* (where insured prepays for specific coverage, insurer may not unilaterally change coverage provided); *State Auto. Ins. Ass'n v. Anderson*, 365 Pa.Super. 85, 528 A.2d 1374 (1987) (whether comprehensive personal injury policy provided coverage for injury to another); *Huffman v. Aetna Life and Casualty Co.*, 337 Pa.Super. 274, 486 A.2d 1330 (1984) (whether extended care facility could be regarded as a "hospital" as defined by insured's hospitalization policy).

Under the facts of this case, and the Supreme Court's ruling in *Collister*, we conclude that the mortgage life insurance policy became effective upon the Dibbles' payment of the premium to Security of America, on August 11, 1986. Thus, David Dibble's death, even if caused by suicide, occurred more than two years after the "effective date" of the policy, and Kerry Dibble is entitled to the proceeds thereof.

Accordingly we find that the trial court did not commit a manifest error of law in granting Kerry Dibble's motion for summary judgment.

Order affirmed.