## Bissol v. Peoples Security Life Insurance Co.

*Andrew J. Primerano* and *Thomas L. Kennedy,* for plaintiff.

*Robert C. Nowalis,* for defendant.

MUNDY, *J.,* June 28, 1993—This matter is before the court after non-jury trial held pursuant to Rule 1038, Pa.R.C.P. The action was commenced by complaint on December 20, 1990, alleging that the plaintiff's decedent, Philip M. Bissol, elected to exercise a guaranteed insurability option under an existing policy of life insurance issued by the defendant, Peoples Security Life Insurance Company. The original policy was issued on March 24, 1982 in the face amount of $100,000.

The complaint alleges that the decedent made the election and paid a premium for the increased insurance on June 14, 1990. He subsequently died on July 31, 1990, from complications associated with his existing skin cancer.

It is uncontroverted that the plaintiff received the proceeds of the original amount of decedent's life insurance policy in the amount of $100,000.

The evidence shows that on June 7, 1990, the plaintiff's decedent met with a representative of the de-

fendant, Asher Grossman, for the purpose of changing the name of the beneficiary on the existing policy. At that time the decedent provided Mr. Grossman with a copy of the original policy.

A second meeting occurred on June 14, 1990, at which time a discussion was held between the decedent and Mr. Grossman concerning the ability of the decedent to increase the face value of the policy by an additional $25,000 under an option under that policy known as a guaranteed insurability benefit rider. In the course of this discussion, Mr. Bissol disclosed to Mr. Grossman that he suffered from melanoma (skin cancer). Subsequent to the aforesaid discussion, Mr. Bissol completed an application for the exercise of the said option in the amount of $25,000. The application disclosed that the quarterly premium on the policy would be $32.25. The decedent indicated on said application that he suffered from cancer and that in September of 1989 he underwent surgery at St. Joseph Hospital in Hazleton, Pa., for the removal of a cancerous growth on his rib cage. (Plaintiff's exhibit 2.) The application further disclosed a medical checkup with Dr. Gandhi in May of 1990. Additionally the decedent paid the initial quarterly premium on the additional coverage (Plaintiff's exhibit 3), and received a receipt in the amount of $32.25 which was signed by the defendant's agent, Mr. Grossman.

After the decedent's death on July 31, 1990, the defendant denied payment under the guaranteed insurability benefit rider. The defendant forwarded plaintiff a cancellation notice dated August 31, 1990, along with a refund of the initial quarterly premium. Plaintiff thereafter instituted this action for payment of the $25,000 benefit under the guaranteed insurability option.

Our initial finding is that this record discloses no evidence of the plaintiff's decedent's misrepresentation

of his condition. The application clearly indicates that he disclosed that he suffered from cancer including surgical procedures to remove cancerous growths and revealed a medical checkup by his treating physician in May of 1990. In addition, the testimony of defendant's agent, Asher Grossman, confirms that the plaintiff advised him of his physical condition in their initial discussion. The testimony further reflects that he and the decedent discussed the lack of any requirement for a physical examination as a prerequisite to exercising the guaranteed insurability option.

The sole legal issue before this court therefore is whether the defendant's subsequent cancellation of the additional coverage is effective.

Our Supreme Court has indicated that the proper focus in cases involving issues of coverage under insurance contracts is the "reasonable expectations" of the insured. *Collister v. Nationwide Life Insurance Company,* 479 Pa. 579, 388 A.2d 1346 (1978), *cert. den.* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1978); *Tonkovic v. State Farm Mutual Automobile Insurance Co.,* 513 Pa. 445, 521 A.2d 920 (1987); *Dibble v. Security of America Life Insurance Co.,* 404 Pa. Super. 205, 590 A.2d 352 (1991).

In determining the reasonable expectations of the insured, we are directed to examine the totality of the insurance transaction. *Collister v. Nationwide Life Insurance Company, supra; Tonkovic v. State Farm Mutual Automobile Insurance Co., supra; Dibble v. Security of America Life Insurance Co., supra.*

The *Collister* court stated:

"In situations where the circumstances of the transaction do not indicate that the insurer intended to provide interim insurance, but nevertheless show that the insurer accepted payment of the first premium at the time it

took the application, it is then up to the insurer to establish by clear and convincing evidence that the consumer had no reasonable basis for believing that he or she was purchasing immediate insurance coverage." *Id.* at 594, 388 A.2d at 1353.

The court went on to discuss the policy reasons behind the reasonable expectation rule:

"The reasonable expectation of the insured is the focal point of the insurance transaction involved here. ... Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled.... [T]he public has a right to expect that they will receive something of comparable value in return for the premium paid." *Id.* at 594, 388 A.2d at 1353. (citation omitted)

In the present case, as in *Collister,* the evidence indicates that at the time of the decedent's death, the defendant had neither issued the option applied for nor had it rejected the application. The decedent, however, had taken all steps necessary and required, including payment of the first premium.

The evidence also clearly shows that the defendant insurance company accepted the premium payment from the Bissols and issued an unconditional receipt. The application was completed by the defendant insurance company's agent, and under "Item J" of the application it is stated: "Client exercised GIB on above policy W0000-2784." The guaranteed insurability benefit rider which was invoked under the foregoing language provides as follows:

"You may increase the stated amount under the policy on the life of the insured on a regular or alternate option date. You may do this without evidence of insurability."

Additionally, the receipt provided Mr. Bissol on June 14, 1990, contained the following language:

"Effective date—The 'effective date' is the latest of: (1) the date of this receipt, or (2) the date when the last required medical exam is completed or (3) any date of issue requested in the application."

The evidence reveals that there was no date of issue requested in the application, no proof of insurability was required and, therefore, the effective date as set forth in the clear language of the receipt was, in fact, the date of the receipt, June 14, 1990.

Thus, the details of the June 14, 1990 meeting between the decedent, Philip Bissol, and the Peoples Security Life Insurance Company agent, Asher Grossman, as well as the information provided on the application and receipt, convince this court that the plaintiff's decedent possessed a reasonable basis for believing that he was purchasing immediate additional insurance coverage pursuant to the option clause.

Accordingly, the court enters the attached:

## VERDICT

A verdict is entered in favor of the plaintiff, Ann Marie Bissol, and against the defendant, Peoples Security Life Insurance Company in the amount of $25,000 plus interest and costs of this action.