**KEY HANDLING SYSTEMS, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (JENKINS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 1997.

Decided March 22, 1999.

John F. Kennedy, Wilkes-Barre, for petitioner.

Jeffrey A. Yelen, Wilkes-Barre, for respondent.

Before PELLEGRINI, J., FLAHERTY, J. and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

For the first time the Court must decide whether an employer obtains workers compensation insurance coverage from the State Workers' Insurance Fund (SWIF) merely by mailing an unsolicited application and premium to SWIF. We hold that an employer is not assured of coverage with SWIF until it receives a certificate of insurance from SWIF and a receipt for the premium from the State Treasurer.

New Jersey based Key Handling Systems, Inc. (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of a Workers' Compensation Judge (WCJ) who held Employer liable under the Pennsylvania Workers' Compensation Act (Act)[1] for the payment of Jeffrey Jenkins' (Claimant) workers' compensation benefits and denied Employer's assertion that Employer had insurance coverage in Pennsylvania with SWIF at the time of Claimant's injury.[2] We affirm.

On June 8, 1990, Employer sent SWIF a check for $620.00 and an application for workers' compensation insurance coverage, applying for coverage effective June 24, 1990. (R.R. 5a.) SWIF received the application and check on June 19, 1990. (R.R. 7a.) Twenty days after its receipt, SWIF mailed to Employer both the application and the check, stating that SWIF required further information from Employer before a policy could be issued.[3] (R.R. 9a.) On July 27, 1990, SWIF received from Employer both the additional information that it originally requested and an additional premium.[4] SWIF then issued a certificate of coverage to Employ-

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4. It is noted that the injury in the instant case occurred prior to the 1996 amendments. The sections governing SWIF, pertinent to the instant matter, were repealed, reenacted verbatim, and renumbered in the Act of June 24, 1996, P.L. 350, No. 57, § 29, 77 P.S. §§ 2601–2626.

2. SWIF, one of the respondents in this appeal, is a statutorily created and governmentally managed workers' compensation insurance fund which provides mandated workers' compensation insurance coverage to all applicants at rates set by SWIF's Board. 77 P.S. § 2604. Under the Act, an employer may, in the alternative, obtain private insurance or be self-insured, if eligible.

3. Although SWIF's response to Employer occurred on the very same day that Claimant was injured (July 9, 1990), it is not claimed and it is not an issue that SWIF had any knowledge of the injury before it rejected the application or issued the policy.

4. With the additional information, Employer returned to SWIF the original $620 check and, also, enclosed an additional check for $1880 which Employer's agent estimated to be the balance due.

er at an annual premium of $2,792, effective July 24, 1990.[5] (R.R. 12a.)

On July 9, 1990, Claimant suffered work-related multiple traumatic injuries at a construction site in Pennsylvania. Travelers Insurance Company (Travelers), Employer's workers' compensation carrier, also headquartered in New Jersey, apparently initially paid the claim because Employer submitted the claim to Travelers in New Jersey. Subsequently, on August 23, 1991, Claimant filed a Claim Petition in Pennsylvania claiming eligibility to receive benefits there under Pennsylvania law on the basis that his employment contract and his injury occurred in Pennsylvania. In the Pennsylvania Claim Petition, Claimant named Travelers as the insurance carrier for Employer.[6]

At a WCJ hearing on January 31, 1995, Travelers' counsel appeared before the WCJ and contested any liability by the carrier for Pennsylvania injuries based upon its specific express exclusion of Pennsylvania liability in Employer's policy.

At the hearing on January 31, 1995, Gilbert Meierhans (Meierhans), testified unsworn, in colloquy with the WCJ and Claimant's counsel, that he, as controller for Employer, signed and sent to SWIF three weeks before Claimant was injured, an application for workers' compensation insurance coverage with SWIF on behalf of Employer on June 8, 1990. (R.R. 5a, 6a.) Meierhans also testified: (1) that the Travelers policy excluded Pennsylvania from its covered territory, and (2) that

Employer did apply for insurance coverage with SWIF. Meierhans also responded to questions from both the WCJ and Claimant's attorney that he was not an attorney, but had come to the hearing without an attorney thinking the problem about insurance coverage could be worked out. (R.R. 18a.)

Meierhans admitted that Employer received notice of the hearing and that he had been authorized by the principals of Employer corporation to attend the hearing. (R.R. 32a.) The WCJ dismissed Travelers from the proceedings by Interlocutory Order dated February 24, 1995, based on the testimony of Employer's controller. (R.R. 49–50a.) Only after that order did Employer's counsel enter its appearance asserting that it was covered for Pennsylvania workers' compensation injuries with SWIF, at which time Claimant apparently filed a Petition for Joinder to make SWIF a party liable in this proceeding.[7]

By decision dated November 27, 1995, the WCJ denied Claimant's petition to join SWIF as a party to the case, ruling that Employer failed to establish that it had insurance coverage with SWIF at the time of Claimant's work-related injury. (R.R. 49–50a.) The WCJ found that Employer was uninsured for Pennsylvania workers' compensation coverage at the time of Claimant's injury and, therefore, Employer was personally liable for the payment of Claimant's workers' compensation benefits, effective as of the date of injury and con-

---

5. The additional premium still owed to SWIF [$2792 – (620 + 1880)] and the date when SWIF issued coverage are not at issue (as opposed to the "effective date," which is an issue).

6. Employer initially reported the injury to its New Jersey workers' compensation carrier, Traveler's Insurance, as a New Jersey injury. Travelers accepted the claim and paid Claimant under the New Jersey compensation system until Employer's statutory liability to Claimant under the New Jersey system was exhausted – approximately eight months. When Claimant's New Jersey benefits were exhausted, because Claimant was still injured,

Claimant filed for benefits under Pennsylvania law. Travelers had issued Employer a workers' compensation insurance policy, however, which specifically excluded coverage in Pennsylvania.

7. Although the Board states that Employer filed a Petition for Joinder, that Petition is not in the record certified to this court by the Board. The Proof of Service of the Petition for Joinder contained in the Certified Record is signed by Claimant's counsel on February 10, 1995, and was served on Employer and others involved by Claimant's counsel.

tinuing thereafter.[8]  Employer appealed to the Board, which affirmed concluding that the WCJ's decision was supported by substantial evidence.  This appeal followed.[9]

On appeal, Employer argues that the Board erred in ruling that SWIF is not the responsible insurance carrier in this case. Employer asserts that because SWIF received its application and premium prior to Claimant's injury on July 9, 1990, SWIF is "bound" to provide insurance coverage to Employer according to the "reasonable expectations of the insured" principle which Employer asserts applies to SWIF and to this case, and imparts insurance coverage with SWIF, as that principle is expressed in *Collister v. Nationwide Life Insurance Co.*, 479 Pa. 579, 388 A.2d 1346 (1978), *cert. denied, Nationwide Life Insurance Co. v. Collister*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979), and in *Dibble v. Security of America Life Insurance Co.*, 404 Pa.Super. 205, 590 A.2d 352 (1991).  In addition, Employer asserts that the WCJ erred as a matter of law when he dismissed Travelers from the case based upon the testimony of Employer's controller during the January 31, 1995 hearing at which Employer had no counsel present. Employer contends that, as a corporation, it could not be represented by a person not an attorney; that, Meirhans, even though he was a corporate officer as controller, was not an attorney and as it was without counsel, it was not able to object to docu-

ments admitted into evidence, was not able to cross-examine witnesses or cross-examine its own employee (Meierhans), and was not able to submit evidence on its own behalf or object to the dismissal of Travelers from the case.

In defense of its position denying liability, SWIF does not cite any sections of the Act but relies primarily on the fact that it did not cash the check sent by Employer, that it returned both the check and the application in a reasonable time and that it had no other prior contact or relationship with Employer, except the receipt of Employer's application.  SWIF argues that Employer did not, therefore, have a reasonable expectation to be insured until actually "accepted" by SWIF.[10]

## Employer Was Not Insured By SWIF

With regard to Employer's first contention that it was insured by SWIF by virtue of its mailing an application and check to SWIF, we first note that SWIF is a system of insurance set up by the Act so that employers will be certain to obtain mandatory insurance coverage that will definitely compensate eligible employees for their injuries.  The Act provides that SWIF is required to provide insurance coverage to subscribing employers as an alternative to contracts of insurance with private commercial carriers, thereby making coverage available to all employers in order to pro-

---

**8.**  From the record it appears that neither Claimant nor Travelers appealed the final WCJ decision nor did either file a brief with the Board or this court.  As a result, the Reproduced Record was prepared only by Employer and SWIF, and lacks considerable information from the Certified Record, especially regarding Employer's allegations about Travelers, which necessitates the transcripts or exhibits to be directly cited herein.

**9.**  Our scope of review on appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence.  *US Airways v. Workers' Compensation Appeal Board (Johnston)*, 713 A.2d 1192 (Pa.Cmwlth.1998).  Substantial evidence is any relevant evidence that a

reasonable mind might consider adequate to support a conclusion.  *NGK Metals Corp. v. Workmen's Compensation Appeal Board (Bochis)*, 713 A.2d 127 (Pa.Cmwlth.1998).

**10.**  SWIF does not discuss or cite any part of the Act (the statute creating SWIF), any section therein, a single case or any other legal authority in positive support of its position that it is not liable as an insurer for Claimant's injuries.  SWIF's defense consists entirely of accepting the common law as governing this matter, attempting to distinguish *Collister* and *Dibble* on their facts and alluding to "the Pennsylvania Motor Vehicle Financial Responsibility Act" as being analogous to this situation, but does not furnish a citation to that latter statute or a relevant section therein to support its argument.

tect payments to injured claimants.[11] Among the applicable procedures necessary for an employer to become a subscriber to the State Workers' Insurance Fund, however, the Act further provides:

The board shall make such investigations as it may deem necessary and, within thirty (30) days after the application, it shall issue a certificate showing the classification or group in which such applicant is entitled to be placed and the amount of premium payable by such applicant for the year for which insurance is sought.[12]

SWIF has, therefore, thirty days to investigate a potential insured and to set the proper premium for insurance after it receives the application before it is mandated to issue a certificate of insurance.

On June 19, 1990, SWIF received from Employer an unsolicited incomplete application in the mail, together with an insufficient premium. Although under the Act SWIF had 30 days to act, SWIF returned the application and the uncashed premium check in less than three weeks to Employer advising it was incomplete, noting that it does not write insurance policies on an "if any" basis. (R.R. 9a.)[13] SWIF's correspondence to Employer stated that until it had certain required information which it specified in its request, it could not process Employer's application and issue a policy of insurance. SWIF expressly stated in its letter that it could not issue any policy until the required information was received and SWIF further expressly stated that it was not assuming any liability. (R.R. 9a.)

By returning the premium within 30 days, SWIF did not enjoy any benefit from the money Employer sent with the unsolicited application. SWIF was, therefore, entirely within the province of the Act by not issuing any policy and, instead, returning the incomplete application and uncashed premium check back to Employer with a request for more information.

■ Section 17 of the Act further states:

All premiums shall be payable to the State Treasurer who shall issue an appropriate receipt therefor, and such receipt, together with the certificate of the board specified in section 16 hereof shall be the evidence that the applicant has become a subscriber to the fund and is insured therein.[14]

The Act puts the applicant on notice, therefore, that it cannot expect to be insured until a receipt from the State Treasurer, as well as the certificate of insurance, is received from SWIF. Consequently, there was substantial evidence to support the WCJ's finding and conclusion that there was no valid insurance contract between SWIF and Employer on the date Claimant was injured. The Board properly affirmed and we see no reason to disturb the decision on appeal.

Employer urges us, however, to hold that, based on the common law, an insurance contract automatically arises when an employer submits an unsolicited application for workers' compensation insurance to SWIF, even if it does not contain sufficient information necessary for the carrier to set the rate, let alone when it is received with an insufficient premium. Employer contends that the principle of the "reasonable expectations of the insured" principle cited in *Collister* and *Dibble* applies.[15]

11. 77 P.S. § 221.

12. 77 P.S. § 341.

13. Neither the briefs nor the record explain what an "if any basis" means.

14. 77 P.S. § 342.

15. In *Collister*, the appellant's husband applied for life insurance and its agent accepted a two-month premium payment in exchange for a receipt from a commercial insurance company conditioned on a completed medical examination being received by the insurer. Less than six weeks later, the applicant was killed before any medical examination was made and before the insurer had acted on the policy. It was held that because the insurer, through its agent, accepted the application form and premium payment, that transaction

Aside from the distinguishing fact that the premiums were solicited in the cases cited by Employer and SWIF, the common law of commercial insurance contracts set forth in *Collister* and *Dibble* has no application to the facts or the law of the instant case on the effective date of insurance with SWIF which is specifically governed by statute. Even though SWIF is apparently compelled to accept all applicants, the Act provides mechanisms to permit SWIF to collect the required and necessary information and premium before issuing any insurance policy.[16] Obviously, SWIF's premium could vary substantially, especially for applicants not otherwise insurable in the commercial insurance market. Even though SWIF must accept all bad risks, the 30–day statutory period also allows SWIF to set the terms for advance periodic payments for the coverage period. Employer is deemed to be on notice of the law of Pennsylvania which gives SWIF 30 days to review the application before issuing a certificate of insurance. Employer cannot, therefore, have had a reasonable expectation of immediate insurance coverage when it placed in the mail its unsolicited application and insufficient check. Employer's reliance on *Collister* and *Dibble* to control the effective date of insurance coverage by SWIF is misplaced since that procedure is established by statute rather than the common law.

Further, because the wording of the Act controls the procedure for applying for insurance from SWIF, the common law of contracts on the effective date of insurance coverage does not govern the instant case any more than the common law of negligence controls entitlement to compensation for work-related injuries. The findings of the WCJ that Employer was uninsured at the time of Claimant's injury on July 9, 1990 (R.R. at 47a.) are supported by substantial evidence.

### Dismissal of Travelers Insurance Company at WCJ Hearing

Employer also contends that the WCJ erred as a matter of law in dismissing Travelers from the case during a hearing at which Employer was not represented by counsel. We do not agree. Employer relies on Pennsylvania law that the insurer has a duty to defend the insured if the factual allegations of the complaint against the insured state a claim which potentially falls within the coverage of the insurance policy. *Roman Mosaic and Tile Co. v. Aetna Casualty and Surety Co.,* 704 A.2d 665, 669 (Pa.Super.1997). This duty to defend remains with the insurer until it is clear that the claim has been narrowed to one beyond the terms of the insurance policy. *Board of Public Education v. National Union Fire Insur-*

created a temporary insurance contract until the insurer either rejected or accepted the application. After recognizing that the authorities were sharply split on the issue, the court followed the California view which is based upon the reasonable expectation of the insured that coverage is in force when the application is taken and payment is accepted. The burden then shifts to the insurer to establish by clear and convincing evidence that the consumer had no reasonable basis for believing that insurance coverage effective immediately was being purchased despite all the conditional language on the application or in the policy.

In *Dibble,* the appellant's husband completed the application for commercial mortgage life insurance and made payments through the monthly mortgage payment for over two years until he committed suicide. Because

the application contained language deferring the effective date of coverage to the first of the month after the first payment, the suicide occurred twenty-two days before the policy exclusion for suicide would have been ineffective, so the insurer denied coverage to the widow. The Superior Court followed the reasonable expectation rule of *Collister* and held that the insurer did not prove by clear and convincing evidence that the Dibbles did not reasonably believe that the policy became effective on the day when they made their first payment.

16. Specifically, the Act sets forth a 30–day period when SWIF may ascertain the information needed to determine the premium which it must charge in order to cover the risk involved. 77 P.S. §§ 341–342.

*ance Co.,* 709 A.2d 910, 913 (Pa.Super.1998).

In this instance however, the claim brought by Claimant against Employer does not even *potentially* fall within the coverage of the insurance policy and is clearly beyond the terms of the policy. The claim clearly falls solely *outside* the coverage of the policy and Employer did not even introduce any evidence (and does not argue) that it is insured by Travelers, but merely attacks the procedure dismissing Travelers whom Claimant induced to enter an appearance by listing Travelers as the insurer on the Claim Petition. The WCJ expressly found that Travelers provided no insurance coverage to Employer in Pennsylvania, and this finding is in accord with the clear language in the declarations on the insurance policy that Travelers issued to Employer. (R.R. 47a)[17]

In addition, the testimony of Meierhans, the controller for Key Handling, corroborated the declarations in the Travelers' insurance policy excluding Pennsylvania from coverage, and the WCJ found this testimony both credible and persuasive.[18] (R.R. 46–47a.) Therefore, the WCJ's dismissal of Travelers is based on substantial, credible evidence and, in accordance with the facts of this case, consistent with Pennsylvania law we will not disturb that decision.

Employer, with no counsel for Travelers present in this appeal, represents through its counsel's brief, however, that Travelers provided an attorney for the first four years of litigation before requesting to be dismissed from the case and therefore, Travelers and its counsel should have been forced to remain on the record. Employer then references in its brief only the hearing of January 31, 1995, where Employer sent its Controller to attend without counsel. The Record reveals, however, that Travelers' counsel clearly stated at that hearing that he had made motions earlier in the case to have Travelers dismissed from the case. (R.R. 51.) In fact, the record (R.R. 45a) reveals that there were 13 hearings scheduled by the WCJs, that 8 hearings were held and most were continued not only because Travelers was trying to be dismissed from the case, but also because the WCJs were trying to get Employer to attend and acknowledge its awareness that Travelers was denying liability. Employer did not retain an attorney to attend any of the hearings.

The certified record shows that Employer was notified of six hearings before the WCJ dismissed Travelers from the case and failed to have its own counsel present at any hearing until after the Interlocutory Order of the WCJ issued on February 24, 1995 dismissed Travelers. Further, after Employer's counsel appeared, not only was there no proof of any kind offered, but there was not even a single argument ever made that Employer did not receive any of the prior hearing notices reflected by the certified record.[19]

17. The declarations page of the policy that Travelers issued to Employer expressly states that coverage for both workers compensation and employers liability insurance in the policy applies only in the state of New Jersey. (R.R. 13a.) Item 3.A of the policy states as follows: "WORKERS COMPENSATION INSURANCE: Part One of the policy applies to the Workers Compensation Law of the state(s) listed here: *NJ.*" (Emphasis added.) The declarations also expressly exclude Pennsylvania as one of the other states covered by the insurance provided under the policy. (R.R. 13a.) Item 3.C of the policy says: "OTHER STATES INSURANCE: Part Three of the policy applies to the states, if any, listed here: All states *except* AK, CA, CO, ID, MD, MT, NV, NY, ND, OH, OK, *PA*, UT, WA, WV, WY, . . . . " (Emphasis added.)

18. Under questioning by WCJ Olivetti, Meierhans testified:

Q: And the – I'm looking at the deck [sic] page here that we marked earlier and it excludes Pennsylvania from coverage from the other states insurance coverage provisions of the policy. Would that also be your understanding?

A: That would be my understanding

(R.R. 25a.)

19. The Certified Record indicates that Employer was notified and failed to appear at the many hearings. *See* Notes of Testimony

■ It is axiomatic that an insurer's duty to indemnify is separate and distinct from its duty to defend. *Zeitz v. Zurich Gen. Accident & Liab. Ins. Co.*, 165 Pa.Super. 295, 67 A.2d 742, 746 (1949). Likewise, the insurer's participation in defending the insured does not affect its ability to later assert that the insured is not entitled to compensation from the insurer simply because it is not covered under the policy. *Id.* Additionally, here, Travelers' attorney immediately raised the coverage and liability question, clearly requested to be dismissed from the case at the second hearing in 1992 and continually renewed the motion to be dismissed, a decision on which was continually postponed because Employer chose not to be present or represented at the numerous hearings scheduled after due notice was given to Employer. The procedure here is not something that raises "significant due process considerations" as Employer's counsel suggests in its argument regarding Travelers.[20]

■ In Workers' Compensation matters, Section 416 of the Act states that if a party fails to appear in person *or by counsel* at a hearing without adequate excuse, the WCJ *shall* decide the matter on the basis of the petition and evidence presented. 77 P.S. § 821.[21] It is, therefore, obvious that Employer in the case before us acted at its peril in failing to have counsel represent it on the record after more than adequate notice of numerous hearings including the very hearing at which Travelers was dismissed from the case.[22] Con-

(N.T.) of the WCJ hearings: N.T. 12/8/92, at p. 4; N.T. 9/21/93, at pp. 3, 4; N.T. 4/6/94, at p. 6; N.T. 10/5/94, at p. 3; N.T. 1/31/95, at p. 3. Employer's Controller appeared at the WCJ hearing 1/31/95 without counsel and was permitted by the WCJ to testify. Subsequently, counsel for Employer entered his appearance at the 4/27/95 WCJ hearing, but, after an opportunity to object or interject anything into the record, counsel for Employer did not. Thereafter, at the 5/31/95 WCJ hearing, when asked by the WCJ if anyone had "anything else," Employer's counsel was silent. No further hearings were held, but the WCJ kept the record open to receive additional information until September 11, 1995, when the record was closed. Employer never later contested before the WCJ the Controller's admissions at the 1/31/95 hearing.

20. In support of its position that the WCJ erred in dismissing Travelers from the case Employer also cites both *Walacavage v. Excell 2000, Inc.*, 331 Pa.Super. 137, 480 A.2d 281 (1984), and *Smaha v. Landy*, 162 Pa.Cmwlth. 136, 638 A.2d 392 (1994), *appeal denied*, 539 Pa. 660, 651 A.2d 546 (1994). These two cases stand for the proposition that a corporation must have counsel in order to proceed in an action at law because a corporation cannot represent itself. *Walacavage*, 480 A.2d at 285; *Smaha*, 638 A.2d at 397. We do not question this expression of the law, but it is simply inapplicable to the facts in the present case where the controller only appeared as an unsworn witness who was present and participated in a colloquy with the WCJ and Claimant's counsel and, although making admissions as a corporate officer which are binding on Employer, he never attempted to act as an attorney by filing any pleading or examining or cross-examining any witness.

21. The decisions of this court support the application of this principle to cases like the one before us. In *Manolovich v. Workers' Compensation Appeal Board (Kay Jewelers)*, 694 A.2d 405 (Pa.Cmwlth.1997), the court held that an employer which has been properly notified of a hearing date cannot avoid its responsibility to appear at the hearing unless it presents "adequate excuse" within the meaning of Section 416 of the Act, which does not include the failure of Employer's insurance carrier to receive notice and attend the hearing, so long as Employer was properly served. *Id.* at 407.

Likewise, in *Purvis v. Workmen's Compensation Appeal Board (Del Ran Builders)*, 664 A.2d 235 (Pa.Cmwlth.1995), the court held that the claimant could not later object to dismissal of his claim when he was given not only ample notice of two hearings at which he failed to appear, but also specific warnings of the consequences if his absence continued. *Id.* at 237.

22. The record is replete with evidence that hearings before the WCJ in this case were delayed and even temporarily postponed on more than one occasion because Employer failed to have an attorney attend to represent its interests, despite being notified time and time again by the Bureau and even by Claimant's counsel that its insurer, Travelers, was contesting liability and was not representing Employer's interests.

Further, the evidence fails to show that Employer has offered any "adequate excuse"

trary to the bald assertions of Employer's counsel, Employer *did* have the opportunity to object to the dismissal of Travelers, to examine its own employee, and to submit evidence on its own behalf, but it simply chose not to take advantage of it. As a result, Employer has lost its opportunity to contest the WCJ's decision to decide the case on the basis of the evidence presented and to dismiss Travelers from the case. Employer's problems are directly due to its knowing failure to direct its attorney rather than its controller to attend the very hearing at which Travelers was dismissed and the numerous hearings prior to that, for which it had notices.[23]

Accordingly, we find the arguments of Employer and its counsel unpersuasive and reject them.

The order of the Board is affirmed.

#### ORDER

NOW, March 22, 1999, the order of the Workers' Compensation Appeal Board, dated May 30, 1997 and circulated June 3, 1997, at No. A95–4786, is affirmed.

under Section 416 of the Act, 77 P.S. § 821, for its failure to appear at these hearings. In fact, at the hearing on January 31, 1995, instead of sending its attorney to the hearing, Employer sent its controller, Meierhans, who testified that Employer did receive notice and authorized him to attend the hearing on Employer's behalf without the representation of counsel. (R.R. 32a.)

**23.** The WCJ showed extreme restraint with Employer's failure to present any excuse, let alone an adequate excuse, and was justified in proceeding based on the evidence presented. Employer, as an absent party with more than adequate notice, cannot be heard to complain later about due process.