NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-3541 & 10-3640
_____

AMERICAN GENERAL LIFE INSURANCE COMPANY,

Appellant at No. 10-3640

v.

RUTH SHENKMAN;
SUSAN KORENGOLD; JACOB BEN ARI; LAVI SHENKMAN,
as trustees of irrevocable agreement of trust, dated 6-23-03;
ZEEV SHENKMAN, Settlor,

Appellants at No. 10-3541
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 09-cv-3191
(Honorable Robert F. Kelly)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 7, 2011

Before:  SCIRICA, SMITH and JORDAN, *Circuit Judges*.

(Filed: December 20, 2011)

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

After Zeev Shenkman's death, American General Life Insurance Company

brought this declaratory judgment action against Ruth Shenkman, Susan Korengold,

Jacob Ben Ari, and Lavi Shenkman, as trustees of Zeev Shenkman's trust. The sole issue in this tragic case is the proper application of the suicide exclusion provision in Shenkman's life insurance policy. For the reasons that follow, we will affirm the grant of summary judgment in favor of American General Life Insurance Company.

I.

On November 13, 2008, Zeev Shenkman committed suicide. More than two years earlier, Shenkman had initiated an exchange of his life insurance policy with General American Life Insurance Company for a new policy with American General Life Insurance Company (no affiliation) that provided greater coverage. The American General policy includes a suicide exclusion, limiting the death benefit to the premiums paid if the insured commits suicide "within 2 years from the Date of Issue." The policy expressly provides that the date of issue is December 19, 2006. But, in a paragraph captioned "Date of Issue," the policy gives two definitions for the term. One sentence defines the date of issue as "the date from which all policy years, anniversaries, and Monthly Deduction dates are determined." This definition is consistent with the express date of issue in the policy because December 19, 2006, was in fact the date used to determine all policy years, anniversaries, and deduction dates. Another sentence, however, defines the date of issue as "the date on which the first premium is due." This definition conflicts with the December 19, 2006, date of issue because the face of the policy specifies that the first premium is due "on or before delivery of this policy," and the policy was delivered on December 12, 2006.

2

In light of this policy language, the District Court found that the date of issue could be interpreted as either December 19, 2006, as expressly stated in the policy, or December 12, 2006, the date on which the policy was delivered and the first premium was due. Because Shenkman committed suicide less than two years from either date, the court determined that the suicide exclusion applied. The court rejected Trustees' contention that the insurer's conduct created a reasonable expectation the policy had actually issued on some earlier date.[1]

## II.

Pennsylvania law requires courts "to give effect to the language of contracts, including insurance policies, if that language is clear and unambiguous." *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 136 (3d Cir. 2005). Recognizing, however, that "insurance contracts are not freely negotiated agreements entered into by parties of equal status," *Collister v. Nationwide Life Insurance. Co.*, 388 A.2d 1346, 1353 (Pa. 1978), "[Pennsylvania] courts have attempted to favor the insured in a number of ways." *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 905 (3d Cir. 1997). Thus, "[a]n unclear, ambiguous provision will be construed against the insurer and in favor of the insured." *West v. Lincoln Benefit Life Co.* 509 F.3d 160, 169 (3d Cir. 2007). And, "even the most

---

[1] The District Court had jurisdiction over this diversity case under 28 U.S.C. § 1332. We have jurisdiction over this appeal under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment, *Tri-M Group, LLC v. Sharp*, 638 F.3d 406, 415 (3d Cir. 2011), interpretation of state law, *Royal Insurance Co. of America v. KSI Trading Corp.*, 563 F.3d 68, 73 (3d Cir. 2009), and conclusions regarding the legal operation of an insurance policy. *Id.* Summary judgment is proper where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Tri-M Group, LLC*, 638 F.3d at 415. Pennsylvania law governs this case.

clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage." *Id.* (quoting *Reliance Ins. Co.*, 121 F.3d at 903) (internal quotations omitted). To ascertain the reasonable expectations of the insured, courts examine "the totality of the insurance transaction involved." *Reliance Ins. Co.*, 121 F.3d at 903 (quoting *Dibble v. Sec. of Am. Life Ins. Co.*, 590 A.2d 352, 354 (Pa. Super. Ct. 1991)) .

## A.

Trustees' first argument is grounded in the policy's alleged ambiguity. Trustees contend that by sending the request to surrender the old policy on November 10, 2006, American General made the first premium—that is, the surrender value of the old policy—due as of that date. Trustees claim the surrender value constitutes "the first premium" because it became due—as a debt owing—before the due date of the first periodic premium. As noted, a provision in the policy defines the date of issue as "the date on which the first premium is due." Trustees' interpretation depends on an unnatural and unreasonable reading of both the phrase "the first premium" and the word "due." Read in context, the phrase "the first premium" is most reasonably read as the first of the periodic premiums that the insured must pay. And the word "due" refers to a due date, not the date on which the payment of the surrender value becomes a debt payable in the future. Moreover, the policy specifies that "[t]he first premium must be paid on or before delivery." In light of this express due date, Trustees' strained reading of the "date on which the first premium is due" is particularly unreasonable. We agree with the District Court's conclusion that the policy language cannot reasonably be construed to have a

4

date of issue other than the date of delivery, December 12, 2006, or the express date of issue, December 19, 2006.[2]

B.

Trustees also argue the "totality" of the insurance transaction establishes that American General created a reasonable expectation that coverage commenced by November 10, 2006, the date on which the insurer submitted its request for surrender of Shenkman's prior policy. To evaluate this claim, we briefly review the relevant background to the transaction.

In 2006, Shenkman sought to increase his life insurance coverage. Leonard Sussman, an independent life insurance agent and general agent of American General, suggested he replace his existing policy through a § 1035 exchange.[3] In July 2006, Shenkman submitted to a medical examination, completed an initial application for insurance with American General, and signed a "Notice Regarding Replacement of Life Insurance and Annuities." Trustees suggest the concluding sentence of this Replacement Notice implies the exchange was not intended to result in a gap in coverage: "You are urged not to take action to terminate or alter your existing life insurance or annuity

---

[2] In their reply brief, Trustees raise a new ambiguity argument regarding the date of issue based on language indicating that the Policy was "SIGNED AT THE HOME OFFICE ON THE DATE OF ISSUE." Since the policy would necessarily have been signed at some point before delivery, Trustees argue, the policy must have issued before delivery. Trustees neither raised this argument before the District Court nor in their opening brief. They offer no compelling reasons why it should not be waived. Even considered on its merits, this argument would not alter our conclusion that the court correctly interpreted the extent of ambiguity in the contract.

[3] I.R.C. § 1035(a)(1) permits tax-free exchanges of life insurance policies.

coverage until you have been issued the new policy, examined it and have found it acceptable to you."

After American General granted underwriting approval, Sussman's office faxed a copy of the filled-out application to Shenkman for signature. Shenkman and his wife as trustee signed the application and returned it by fax on October 12, 2006. On October 20, each trustee signed a § 1035 Absolute Assignment, which assigned his or her rights under the old policy to American General. The Absolute Assignments were received by American General on November 9, 2006. Trustees claim the Absolute Assignments provide that American General would only surrender the old policy after issuing its new policy.[4]

On November 10, American General sent a surrender request to General American Life Insurance Company, which surrendered its policy on November 17, 2006, and sent American General a check for the surrender value on November 20, 2006. On December 12, 2006, the policy was delivered and Shenkman paid the first premium.

Trustees assert the purpose of the transaction—to increase coverage while avoiding tax consequences by using a § 1035 exchange—and the language of the Replacement Notice and the § 1035 Absolute Assignments created a reasonable

---

[4] The sentence reads as follows: "I understand that if the Company underwrites, approves my application for, and issues to me a new life insurance policy or annuity contract which I accept on the life of the same insured in the [old policy], then the company intends to surrender the [old policy] for its cash value." This can be read loosely to imply the company will only surrender the old policy after taking the specified steps. But such reading rests on a logical fallacy. The phrase, "if the Company [takes specified steps], then the company intends to surrender the [old policy]," does not mean that the company will only surrender after taking the specified steps.

expectation of continuous coverage during the exchange. Accordingly, they contend, Shenkman could have reasonably expected the policy had already issued when the insurer submitted its surrender request.[5] But that conclusion does not necessarily follow. That Shenkman might have had a general expectation of continuous coverage during the exchange does not establish a reasonable expectation that the date of issue for purposes of the suicide exclusion is before both the date specified on the policy and the date on which the policy was delivered and the first premium paid.

Any such expectation conflicts with the communications between the parties and the policy language.[6] The Absolute Assignment form—which Trustees argue contributed to Shenkman's expectation that the American General policy had issued before it surrendered his prior policy—states that "no policy or contract comes into force as a result of this assignment." In fact, "[t]here will be no policy or contract in effect unless the first premium is paid . . . ." And the form specifies that "the first premium must be

---

[5] Contrary to Trustees' contention, *Collister*, 388 A.2d 1346, and *Dibble*, 590 A.2d 352, did not present the same issue as this case. In those cases, the court reasoned that when the insured paid the first periodic premium he or she could reasonably expect to receive coverage in return. Those first payments of a periodic premium are quite different from the surrender value in this case. Rather than a payment sent by the insured to an insurance company, the surrender process involves one insurance company transferring money to another. Further, unlike the periodic premium payments at issue in *Collister* and *Dibble*, the surrender value is a onetime transfer not directly linked to a period of insurance coverage. In short, the surrender process is less likely to create in the insured a reasonable expectation of coverage.

[6] Trustees' argument that the court erred by conflating its analysis of ambiguity in the policy language with its analysis of the reasonable expectations of the insured mischaracterizes the law and the court's opinion. Under Pennsylvania law, the language of the policy is "one aspect of the totality of the circumstances that may lead to the reasonable expectations of the insured." *West*, 509 F.3d at 169. The court properly considered this language as part of its reasonable expectations analysis.

paid no later than the time the policy applied for is delivered." This language conforms with the policy language in stating that the policy would not issue before the first premium was paid. Shenkman did not make that first payment until the policy was delivered on December 12, 2006. Accordingly, the totality of the transaction does not support a reasonable expectation that the date of issue was before December 12, 2006.

## III.

In sum, neither the language of the policy nor the totality of the insurance transaction supports Trustees' contention that the policy's date of issue was more than two years before Shenkman committed suicide. We will affirm.