

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-26-1999

# Medical Protective v Watkins

Precedential or Non-Precedential:

Docket 98-7515

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"Medical Protective v Watkins" (1999). *1999 Decisions.* Paper 310.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/310

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 26, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7515

THE MEDICAL PROTECTIVE COMPANY, a Corporation

v.

WILLIAM WATKINS, D.D.S.;
LEONARD MEDURA, D.D.S.; JOSEPH MAZULA, D.D.S.;
DAVID WALSKI; LISA WALSKI; DAVID WALSKI,
Administrator of the Estate of Jonathan Walski, Deceased;
WATKINS AND MEDURA, a partnership

     WILLIAM WATKINS, D.D.S.;
     WATKINS AND MEDURA

     Appellants

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 97-cv-00123)
District Judge: Honorable A. Richard Caputo

Argued March 23, 1999

Before: GREENBERG and ROTH, Circuit Judges, and
POLLAK,[1] District Judge

(Opinion filed November 26, 1999)

_____

1. Honorable Louis H. Pollak, United States District Court Judge for the
Eastern District of Pennsylvania, sitting by designation.

John W. Jordan, IV, Esquire
 (Argued)
Gaca, Matis, Baum, & Rizza
Four PPG Place, Suite 300
Pittsburgh, PA 15222

 Attorney for Appellee
 The Medical Protective Company

James F. Mundy, Esquire
Raynes, McCarty, Binder, Ross
 & Mundy
1845 Walnut Street, Suite 2000
Philadelphia, PA 19103

 Attorney for Appellees
 Lisa and David Walski,
 David Walski, Administrator of the
 Estate of Jonathan Walski,
 Deceased

Carl A. Solano, Esquire (Argued)
Philip G. Kircher, Esquire
Schnader, Harrison, Segal & Lewis
1600 Market Street, Suite 3600
Philadelphia, PA 19103

 Attorneys for Appellants
 William Watkins, D.D.S. and
 Watkins and Medura,
 a partnership

OPINION OF THE COURT

ROTH, Circuit Judge.

The facts of this case are tragic. A dentist, defendant William Watkins, decided to anesthetize a three-year old boy in order to repair dental cavities. Watkins used the services of an independent dental anesthesiologist to administer general anesthesia in Watkins's office. While the boy was anesthetized, he suffered cardiac arrest and died. This appeal is from a declaratory judgment action in which Watkins' insurance company, Medical Protective Co.,

sought a ruling that Watkins and his partnership were not covered by the Medical Protective policies. The significant policy language was a clause that excluded coverage for "any liability arising from the administration of any form of anesthesia in dosage designed to render the patient unconscious unless administered in a hospital."

The District Court granted summary judgment in favor of the insurance company, holding that the language of the exclusionary clause was unambiguous and applicable to the case at hand. In addition, the District Court held that the doctrine of reasonable expectations was inapplicable.

For the reasons stated below, we will reverse and remand the case to the District Court.

I. FACTS

William Watkins, D.D.S., is a licensed dentist in Dallas, Pennsylvania, practicing in a partnership known as Watkins and Medura. Dr. Watkins does not have, and never has had, a license to administer anesthesia. Rather, throughout the period that Dr. Watkins and Watkins and Medura (collectively, the "Watkins defendants") were covered under the policies at issue, they had made arrangements with Dr. Joseph Mazula, a licensed oral surgeon and dental anesthesiologist, to administer anesthesia to patients, when needed, in the Watkins offices. Dr. Mazula had administered general anesthesia in Dr. Watkins' office since as early as 1979, up until May 1996. Although Dr. Mazula performed these services at Dr. Watkins' office and used some equipment supplied by Watkins and Medura, Dr. Mazula was not employed by Dr. Watkins or the partnership.

In January 1985, Dr. Watkins completed a Medical Protective insurance application that contained numerous questions about his and the partnership's dental practice. He provided the following answers to Question 13 on the application:

> Do you or an employee of your administer general anesthesia? [yes or no]  no . In a dental office? [yes or no]  no . In a hospital? [yes or no]  no . Other? [yes or no] ___. Types of anesthetic used? _____.

3

No question on Medical Protective's application asked the applicant whether anyone other than the applicant or the applicant's employee ever administered general anesthesia in the applicant's office.

Plaintiff Medical Protective Company issued malpractice insurance policies to the Watkins defendants that provided coverage for "any claim for damages, at any timefiled, based on professional services rendered or which should have been rendered, by the insured or any other person for whose acts or omissions the insured is legally responsible in the practice of the insured's profession." The policies also contained a clause, referred to as Exclusion 100:

> This policy does not cover any liability arising from the administration of any form of anesthesia in dosage designed to render the patient unconscious unless administered in a hospital.

Dr. Watkins' policy also contained an "expanded coverage endorsement" (Endorsement 540) that stated that the policy was amended to add Paragraph A(7), an exclusion for:

> any liability the insured, named in the policy, incurs under a contract or agreement; provided that this exclusion does not apply to:
>
> . . .
>
> (c) Any liability the insured incurs in rendering professional services under any contract or agreement with another dentist or other provider of professional services in the practice of the insured's profession; or
>
> (d) Any liability the insured incurs in rendering professional services in connection with furnishing therapeutic agents or supplies in the practice of the insured's profession.

In light of the various policy provisions and the application he filled out, Dr. Watkins concluded when he read Exclusion 100 that "since I was not administering the anesthesia, that didn't really pertain to me, that I would have coverage if someone else was administering the anesthesia."

4

On March 5, 1996, David and Lisa Walski brought their three-year old son, Jonathan, to Dr. Watkins' office for a dental examination. During the examination, Dr. Watkins discovered four cavities and scheduled an appointment in May 1996 to fill them. Because Jonathan would not sit still, Dr. Watkins decided during the March visit that general anesthesia should be used while treating Jonathan. As was his practice, Dr. Watkins arranged for Dr. Mazula to administer the anesthesia to Jonathan in Dr. Watkins' office during the May appointment. On May 1, Dr. Mazula did administer general anesthesia to Jonathan, and Dr. Watkins began the repair of Jonathan's teeth. During the procedure, Jonathan experienced cardiac arrest and underwent emergency treatment. Dr. Watkins, who had been trained and previously certified in cardio-pulmonary resuscitation (CPR), but lacked a current certification, administered CPR to Jonathan. Emergency medical personnel were also called to the scene, but Jonathan could not be revived.

On July 10, 1996, the Walskis filed a wrongful death action, in their own right and as administrators of Jonathan's estate, against Dr. Mazula (and his professional corporation) and the Watkins defendants in the Court of Common Pleas of Luzerne County, Pennsylvania. The Walskis' cause of action against Dr. Mazula alleged, among other things, that he "administered a general anesthetic" to Jonathan "in a negligent, careless, and reckless and wanton manner as a result of which Jonathan D. Walski suffered a cardiac arrest leading to his death." Ultimately, the Walskis settled their claims against Dr. Mazula. 2

The Walski's cause of action against the Watkins defendants asserted that Dr. Watkins did not obtain their informed consent before prescribing the anesthesia for Jonathan in March 1996 and that Dr. Watkins was negligent in various ways during that March visit with respect to his decision to anesthetize the boy and to employ Dr. Mazula to administer the anesthesia. The action against the Watkins defendants also alleged that Dr. Watkins was

_____

2. In December 1996, Dr. Mazula also pleaded guilty to involuntary manslaughter in connection with the death of Jonathan Walski.

5

negligent in his treatment of Jonathan in May 1996 after Jonathan had suffered the cardiac arrest.

Medical Protective provided a defense to the Watkins defendants, subject to a reservation of its right to seek a declaration that its policies did not cover the Watkins defendants with respect to the Walskis' claims. Medical Protective then brought this declaratory judgment action in the United States District Court for the Middle District of Pennsylvania against the Watkins defendants and the Walskis, seeking a declaration that the Watkins defendants were not covered by the Medical Protective policies because the claims "arise from the administration of anesthesia." The case was submitted to the District Court on a joint stipulation of facts and cross-motions for summary judgment. On August 20, 1998, the District Court ruled that the policies provided no coverage for any liability which arises from the administration of anesthesia. He therefore granted summary judgment in favor of Medical Protective. Specifically, the court found that the language of Exclusion 100 was unambiguous and applicable, see District Court Memorandum at 4-5, and that the doctrine of reasonable expectations was inapplicable, id. at 5-6. The Watkins defendants appealed.

II. DISCUSSION

The District Court had subject matter jurisdiction under 28 U.S.C. S 1332(a), as the diversity and amount-in-controversy requirements were met. We have jurisdiction under 28 U.S.C. S 1291, as this appeal is from a final judgment that disposed of all parties' claims.

"When reviewing an order granting summary judgment we exercise plenary review and apply the same test the district court should have applied." Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994). "Under Federal Rule of Civil Procedure 56(c), that test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Id. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will

6

properly preclude the entry of summary judgment."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
In addition, "summary judgment will not lie if the dispute
about a material fact is `genuine,' that is, if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." Id. Finally, "[w]e review the facts in the
light most favorable to the party against whom summary
judgment was entered." Coolspring Stone Supply, Inc. v.
American States Life Ins. Co., 10 F.3d 144, 146 (3d Cir.
1993).

In addition, the interpretation of the scope of coverage of
an insurance contract is a question of law properly decided
by the court, a question over which we exercise plenary
review. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900
(3d Cir. 1997); McMillan v. State Mut. Life Assur. Co., 922
F.2d 1073, 1074 (3d Cir. 1990). The parties agree that
Pennsylvania law governs this case.

A. Ambiguity

We are guided by well-settled principles of Pennsylvania
law governing the interpretation of insurance policies.
When the language of an insurance contract is clear and
unambiguous, a court is required to enforce that language.
Standard Venetian Blind Co. v. American Empire Ins. Co.,
469 A.2d 563, 566 (Pa. 1983). Furthermore, if possible, "a
court should interpret the policy so as to avoid ambiguities
and give effect to all of its provisions." Little v. MGIC Indem.
Corp., 836 F.2d 789, 793 (3d Cir. 1987).

The courts have held, however, that "if the policy
provision is reasonably susceptible to more than one
interpretation, it is ambiguous." McMillan, 922 F.2d at
1075. "In determining whether a contract is ambiguous, the
court must examine the questionable term or language in
the context of the entire policy and decide whether the
contract is `reasonably susceptible of different
constructions and capable of being understood in more
than one sense.' " Reliance Ins. Co., 121 F.3d at 900 (citing
Gamble Farm Inn, Inc. v. Selective Ins. Co., 656 A.2d 142,
143-44 (Pa. Super. Ct. 1995) (quoting Hutchison v.
Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986))); see
also Little, 836 F.2d at 794 (holding that, even if insurer's

7

interpretation is reasonable, if insured's interpretation is also reasonable, then provision is ambiguous and should be construed in favor of insured). "Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." McMillan, 922 F.2d at 1075. This rule has been applied liberally in Pennsylvania. Id. at 1075 & n.1.

As we explained in McMillan, two pragmatic justifications have been offered by the courts for this rule of interpretation. First, "insurance policies are not ordinary contracts but are contracts of adhesion between two parties not equally situated and thus equity requires their interpretation in favor of the weaker party." Id. at 1075. "The insurer is an expert in its field `and its varied and complex instruments are prepared by it unilaterally whereas the assured . . . is a layperson unversed in insurance provisions and practices.' " Id. (quoting Allen v. Metropolitan Life Ins. Co., 208 A.2d 638, 644 (N.J. 1965)). The second justification is that the courts apply "the familiar contract rule interpreting ambiguity against the scrivener, recalling the hoary maxim ambigua responsio contra proferentem est accipienda" -- that is, "[a]n ambiguous answer is to be taken against him who offers it." Id. at 1075 & n.2. Explaining its adoption of this rule of interpretation, the Pennsylvania Supreme Court wrote: "The person who writes with ink which spreads and simultaneously produces two conflicting versions of the same proposition cannot complain if the person affected by both propositions chooses to accept that which is more helpful to him and which is against the interests of the contract writer." Sykes v. Nationwide Mut. Ins. Co., 198 A.2d 844, 845 (Pa. 1964) (quoted in McMillan, 922 F.2d at 1075).

In the instant case, Exclusion 100 states that the policy does not cover "any liability arising from the administration of any form of anesthesia in dosage designed to render the patient unconscious unless administered in a hospital." The clause fails to refer specifically to the person or class of persons for whose acts of administering general anesthesia the exclusion applies. Medical Protective's position is that

8

the clause is clear and unambiguous in denying coverage for any liability arising from the administration by any person of any form of anesthesia, unless administered in a hospital. While this interpretation may be reasonable, the interpretation offered by the insured is also reasonable. The Watkins defendants suggest that one could interpret the clause to exclude coverage only when the administration of the anesthetic is performed by the policy holder, Dr. Watkins, or his employees. We find this interpretation eminently reasonable, especially since the exclusion is in the context of a policy that provides coverage against liability for Dr. Watkins' own acts and the acts of persons for whom he is legally responsible. In the case of a dentist who does not administer general anesthesia, review of Exclusion 100 could lead the dentist reasonably to conclude that, because he does not administer such anesthesia, he will not be subject to the exclusion if he is sued in connection with the administration of general anesthesia by a qualified independent contractor. Indeed, Dr. Watkins testified: "I felt that since I was not administering the anesthesia, [the exclusion] didn't really pertain to me, that I would have coverage if someone else was administering the anesthesia."

Medical Protective's interpretation, moreover, requires an insured to read into the exclusionary clause the phrase "by any person." The burden of precisely drafting the policy rested with the insurance company and scrivener, Medical Protective, and it was free to employ more precise language. "An insurer's failure to utilize more distinct language which is available reinforces a conclusion of ambiguity under Pennsylvania law." McMillan, 922 F.2d at 1077.

We note that we do not find persuasive the District Court's reliance on Northern Ins. Co. v. Aardvark Assoc., 942 F.2d 189, 194 (3d Cir. 1991), in which we held that an insurance policy clause excluding coverage for liability " `arising out of the discharge, dispersal, release or escape' of pollutants" was unambiguous, even though the clause did not identify the polluters (active or passive). Id. (quoting policy language). The District Court analogized Exclusion 100 to the pollution exclusion, holding that "[a]s in Northern Ins., the identity of the one who administers the

9

anesthesia is not necessary to render the language of the exclusion clear and unambiguous." District Court Memorandum at 5. Medical Protective urges us to follow Northern Ins. and other pollution cases construing identical policy language that have also rejected distinctions based on the identity of the actor or the nature of its conduct. See Hyde Athletic Indus., Inc. v. Continental Cas. Co. , 969 F. Supp. 289 (E.D. Pa. 1997); Federal Ins. Co. v. Susquehanna Broad. Co., 727 F. Supp. 169 (M.D. Pa. 1989), aff'd mem., 928 F.2d 1131 (3d Cir. 1991); O'Brien Energy Sys., Inc. v. American Employers' Ins. Co., 629 A.2d 957 (Pa. Super. Ct. 1993).

We must, however, examine purportedly ambiguous language in the context of the entire policy. Reliance Ins. Co., 121 F.3d at 900. The pollution exclusion clause in the general liability policies at issue in the Northern Ins. line of cases does not deal with personal, professional services. Rather than turning on what any individual did or did not do, the exclusion depends on whether something was done by, or happened to, any of a specific group of inanimate things —— that is, on whether any pollutants were discharged, dispersed, released, or escaped. The exclusion applies to any resulting claim against the insured, and it does not matter whether any individual employed by the insured, or anyone else, did or did not do anything to cause the pollution. In contrast, the professional liability policy in this case necessarily deals with professional services performed by the named dentists and their employees. The "administration of anesthesia" in Exclusion 100 must refer to the administration of anesthesia by someone specific. The coverage must be tied to the performance of professional services by the named insureds. Professional medical services simply are not analogous to a condition like pollution that may be caused by many parties that are difficult to identify.

Thus, in light of the fact that the Watkins defendants have offered a reasonable alternative interpretation of the exclusionary clause, we find that the clause is ambiguous. See Butterfield v. Giuntoli, 670 A.2d 646, 652 n.8 (Pa. Super. Ct. 1995) ("[I]f a policy is reasonably susceptible of two interpretations, it must be construed in the insured's

10

favor so as not to defeat, unless clearly necessary, the claim
to indemnity which the insured intended to obtain."). The
rule of construing insurance policies in favor of the insured
applies especially when, as here, an exclusionary clause is
purportedly ambiguous, because "exceptions to the general
liability of the insurer are to be strictly construed against
the insurance company." Contrans, Inc. v. Ryder Truck
Rental, Inc., 836 F.2d 163, 169 (3d Cir. 1987) (quoting
Frisch v. State Farm Fire & Cas. Co., 275 A.2d 849, 851 (Pa.
Super. Ct. 1971)). Finally, the Pennsylvania Supreme Court
has cautioned that "if [a court] should err in determining
the meaning of an insurance policy provision . . . ,[its]
error should be in favor of coverage for the insured." Motley
v. State Farm Mut. Ins. Co., 466 A.2d 609, 611 (Pa. 1983).3

Therefore, we must interpret the exclusionary clause in
favor of Dr. Watkins. We hold that Exclusion 100 is
inapplicable to the instant case and that the insurance
policy covers the malpractice claims asserted against Dr.
Watkins.

B. Reasonable Expectations

We also disagree with the District Court's analysis of the
reasonable expectations argument. In light of
Pennsylvania's doctrine of reasonable expectations, we find
that a genuine issue of material fact exists as to whether
Dr. Watkins had a reasonable expectation that he would be
_____

3. We note that we do not take into consideration the Watkins
defendants' further argument that, in Dr. Watkins' policy, the scope of
Exclusion 100 is further rendered ambiguous by Endorsement 540,
which amends (under the heading "Expanded Coverage Endorsement")
the insurance policy by excluding liability incurred"under contract or
agreement," but then excepts from that exclusion any liability incurred
by the insured "in rendering professional services under any contract or
agreement with another dentist or other provider of professional services
in the practice of the insured's profession," as well as any liability
incurred by the insured "in rendering professional services in connection
with furnishing therapeutic agents or supplies in the practice of the
insured's profession." This argument was not raised in the District
Court, and "[i]t is well established that failure to raise an issue in the
district court constitutes a waiver of the argument." Brenner v. Local
514,
United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283,
1298 (3d Cir. 1991).

11

covered by the insurance policy as long as he arranged for anesthesia to be administered by a qualified person other than himself or one of his employees.

In our recent discussion of Pennsylvania's reasonable expectations doctrine, we observed that "the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." Reliance Ins. Co., 121 F.3d at 903 (citing Collister v. Nationwide Life Ins. Co., 388 A.2d 1346 (Pa. 1978) and Tonkovic v. State Farm Mutual Auto Ins. Co., 521 A.2d 920 (Pa. 1987)). We noted that "[i]n most cases, `the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations.' " Id. (quoting Bensalem Tp. v. International Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994)). Nevertheless, we instructed that "[c]ourts . . . must examine `the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured.' " Id. (quoting Dibble v. Security of Am. Life Ins. Co., 590 A.2d 352, 354 (Pa. 1991)). "As a result, even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage." Id."[T]he insurer is bound not only by the expectations that it creates, but also by any other reasonable expectation of the insured. The insured's reasonable expect