**Eileen FATZINGER, Plaintiff,**

v.

**LEHIGH VALLEY HOSPITAL, Defendant.**

**No. CIV. A. 99–2886.**

United States District Court, E.D. Pennsylvania.

Feb. 15, 2001.

Richard J. Orloski, Orloski, Hinga & Pandaleon, Allentown, PA, for plaintiff.

A. James Johnston, Jonathan B. Sprague, Margret M. Hagar, Post & Schell, P.C., Philadelphia, PA, for defendant.

## MEMORANDUM

JOYNER, District Judge.

This is a Title VII retaliation case brought by Plaintiff Eileen Fatzinger ("Plaintiff") against Defendant Lehigh Valley Hospital ("LVH"). In her Complaint, Plaintiff alleges that LVH unlawfully retaliated against her for filing an earlier discrimination suit and for filing several subsequent charges of discrimination against LVH. LVH now moves for summary judgment. For the reasons below, we will deny LVH's Motion.[1]

## BACKGROUND

Taken in the light most favorable to Plaintiff, the relevant facts are as follows. Plaintiff is a Registered Respiratory Therapist ("RRT") who has worked at LVH since 1978. In March 1993, LVH eliminated Plaintiff's RRT position. Thereafter, Plaintiff filed a Title VII suit in this district, alleging that LVH fired her in retaliation for complaining about a male co-worker's sexual harassment of another female employee. Following a jury trial presided over by then Chief Judge Cahn, the jury returned a verdict in favor of Plaintiff. Judge Cahn later ordered LVH to reinstate Plaintiff as an RRT. After an unsuccessful appeal to the United States Court of Appeals for the Third Circuit, LVH reinstated Plaintiff on December 1, 1997. Upon reinstatement, Plaintiff was assigned to the Liberty Nursing and Rehabilitation Center ("Liberty"), an LVH-affiliated facility, where she underwent a month-long orientation process. Plaintiff finally began her actual work at Liberty in January 1998.

Unfortunately, problems ensued almost immediately after Plaintiff's return to work. On January 26, 1998, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which she claimed that LVH was retaliating against her for her prior successful lawsuit. Plaintiff alleged that LVH retaliated against her by (1) making her new start date December 1, 1997, instead of February 3, 1997 as ordered by Judge Cahn; (2) forcing her take a position at Liberty instead of at LVH's main facility; and (3) improperly calculating her seniority. (Pl. Compl. at Ex. A) (Def.Ex. A).

Less than two months later, LVH disciplined Plaintiff for alleged poor work performance. The misconduct was chronicled in a "Confirmation of Counseling" issued on March 2, 1998. In that report, LVH documented that Plaintiff committed several violations of hospital policy, including (1) crossing out, and failing to initial, treatment sheets; (2) loudly complaining in front of a patient; and (3) failing to complete work assignments in a timely manner. (Def.Ex. G). Immediately following this report, Plaintiff filed a second EEOC charge of discrimination, this time claiming retaliation in the form of the "bogus

1. This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331.

charges" contained in LVH's 3/2/98 report. (Def.Ex. H). Later, in August 1998, Plaintiff filed a third EEOC charge in which she repeated her claim about the bogus charges in the counseling report and, in addition, alleged that LVH retaliated further by denying her a requested day off on June 22, 1998. (Pl. Compl. at Ex. C) (Def.Ex. A). No further actions were taken by either party until November 1998.

On November 4, 1998, Plaintiff received notice that she was being placed on a five-day suspension for misconduct occurring during October and November 1998. The suspension notice cited several incidents, including (1) failing to follow a physician's order despite repeated reminders; (2) failing to complete assignments in a timely manner on nine separate occasions; and (3) making a derogatory comment about Liberty in the presence of an outside vendor and manager. (Def.Ex. I). Although she claimed the charges were unsubstantiated, Plaintiff served her suspension and then returned to work.

After her return, Plaintiff was scheduled to work in the hospital's Transitional Open Heart Unit ("TOHU") and Open Heart Unit ("OHU") during the 7:00 P.M. to 7:00 A.M. shift on January 25, 1999 to January 26, 1999. On those particular days, the TOHU and OHU became especially busy, resulting in Plaintiff inadequately performing, or failing to perform, several of her duties during her shift. Following Plaintiff's deficient performance on January 25/26, LVH suspended Plaintiff again while it commenced an internal investigation of the events that evening. The findings of the investigation were initially outlined in a March 9, 1999 investigative report, which found that during Plaintiff's TOHU/OHU shift (1) a patient had to be placed on a ventilator because Plaintiff could not be found; (2) Plaintiff failed to respond to multiple pages; (3) a doctor was forced to change an ventilator himself because Plaintiff could not be located; (4) Plaintiff entered incorrect information on a patient's ventilator sheet; (5) Plaintiff failed to chart certain treatment that a patient received; (6) Plaintiff deficiently documented ventilator use; and (7) Plaintiff made chart entries late and, in some cases, improperly backdated charts. (Def.Ex. J). While the internal investigation was still proceeding, Plaintiff filed her fourth EEOC charge, alleging that she was under suspension because of a "blatant[ ] set up." (Pl. Compl. at Ex. E) (Def.Ex. A).

Following the investigation, Plaintiff was given an opportunity to offer relevant information and/or a rebuttal with respect to the charges against her. Plaintiff continued to maintain that she was set up to fail by LVH. Finding Plaintiff's explanations unavailing and the evidence against her overwhelming, LVH terminated Plaintiff's employment effective March 29, 1999. In reaching its decision, LVH's final report stated, in part, that "the shear magnitude and enormity of improper charting, procedural errors and deficiencies clearly demonstrate sub-standard medical care and raises significant, serious concern about Ms. Fatzinger's clinical competency." (Def. Ex. J at 10). On April 13, 1999, Plaintiff filed her fifth and final EEOC charge alleging retaliation that culminated in her firing. Plaintiff later instituted the instant action in this Court on August 10, 1999.

## DISCUSSION

### I. Legal Standard

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgement as a matter of law." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348 and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgement. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgement as a matter of law. *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. 2505.

## II. *Title VII*

### A. *Burden Shifting Framework*

Plaintiff's retaliation claim arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* When evaluating retaliation claims under Title VII, courts apply the well-known burden shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory treatment cases." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). This framework consists of three steps: First, the plaintiff must establish a prima facie case of discrimination. Next, once a prima facie case is demonstrated, the burden shifts to the defendant to forward a legitimate non-discriminatory reason for the adverse employment action. Finally, if a legitimate non-discriminatory reason is provided, the plaintiff has the opportunity to show that the defendant's stated reasons were not the true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817. In this case, both parties stipulate that, for purposes of this Motion, the first two steps of the above framework have been met. Therefore, we will concentrate our analysis solely on the third step, that is, whether Plaintiff has sufficiently demonstrated that LVH's reasons for her discharge were pretextual.

### B. *Pretext Analysis*

There are two ways by which a plaintiff can fulfill its burden at summary judgment with respect to showing pretext. The plaintiff must point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 413 (3d Cir.1999) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994) and *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1067 (3d Cir.1996) (en banc)). To succeed under the first prong of the *Fuentes* test, a plaintiff must do more than show that the employer's decision was wrong or misguided. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108–09 (3d Cir.1997) (noting that factual dispute at issue is "whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent."). The plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.* Thus, a successful plaintiff satisfies his burden by showing that "the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real rea-

son.'" *Jones*, 198 F.3d at 413 (quoting *Keller*, 130 F.3d at 1109).

Under the second prong of the *Fuentes* test, a plaintiff can withstand summary judgment by showing that discrimination was more likely than not the motivation behind the adverse employment action. *See id.* This burden can be met in a number of ways, including showing "that the employer previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Id.* (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir.1998)).

In this case, LVH argues that Plaintiff was discharged for her documented poor performance after being reinstated in December 1997. LVH further contends that, even if Plaintiff disputes the wisdom of her dismissal, she has failed to raise a genuine issue of material fact with regard to any retaliatory conduct on LVH's part. Plaintiff counters by alleging that the poor reviews of her performance were nothing more than fabricated charges designed to retaliate against her for bringing an earlier successful lawsuit. Plaintiff also argues that, because a jury previously concluded that she was discriminated against by LVH, the question of whether she was retaliated against now is automatically a jury question. Finally, Plaintiff suggests that in many of the alleged instances of misconduct, similarly situated employees who engaged in similar misconduct were treated less harshly.

Turning to the first *Fuentes* prong, we find that Plaintiff has not raised a genuine issue of material fact. From approximately February 1998 to March 1999, LVH documented multiple instances of Plaintiff's misconduct, including various procedural errors, unresponsiveness, incomplete assignments, and inappropriate personal behavior while on duty. This misconduct resulted in counseling, two suspensions, and ultimately Plaintiff's discharge. Although Plaintiff takes issue with the substance of many of these allegations, she offers no evidence that LVH did not honestly believe that she performed deficiently or engaged in misconduct. Moreover, Plaintiff begrudgingly admits that her performance was in some instances below acceptable levels. (*See* Pl. Dep. at 361–375, 507–542, 598–616) (Def.Ex. C). While making these admissions, Plaintiff offers numerous excuses for her conduct and characterizes the situations differently. However, despite Plaintiff's forceful protests, all of her excuses, characterizations, and disputes go to the wisdom of LVH's decision to terminate her. The record reveals no dispute that many, if not all, of the problems occurred or that they could be sufficiently serious to merit discipline and discharge. As a result, viewing all the facts in a light most favorable to Plaintiff, we conclude that no reasonable fact-finder could find that LVH's reasons for Plaintiff's discharge were so plainly wrong that they could not have been its real reasons or that they were otherwise unworthy of credence. *See Jones*, 198 F.3d at 413; *Keller*, 130 F.3d at 1108–09.

Next, under the second *Fuentes* prong, we examine whether a fact-finder could reasonably believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of LVH's discharge of Plaintiff. If Plaintiff is to meet her burden under this prong, she must "point to evidence that proves [retaliation] in the same way that critical facts are generally proved—based solely on the natural probative force of the evidence." *Keller*, 130 F.3d at 1111 (stating standard in context of age discrimination case).

Our inquiry is complicated in this case by the parties' prior litigation, at the conclusion of which a jury found that LVH had discriminated against Plaintiff in violation of Title VII. This finding led directly to Plaintiff's reinstatement, and the issues of the instant case developed thereafter.

Plaintiff now argues that this background, standing alone, automatically creates a jury question as to whether LVH's discharge of her was retaliatory. Because we find that Plaintiff has produced, albeit barely, sufficient evidence on the record as a whole to withstand summary judgement, we need not decide whether the prior verdict in her favor alone would be sufficient.

As already discussed, we first make note of the relevant history between these parties, most significantly the prior jury verdict that Plaintiff was indeed a victim of discrimination at the hands of LVH. Against this backdrop, we consider which, if any, factual disputes exist surrounding the particular disciplinary actions that led to Plaintiff's termination in March 1999. Although Plaintiff denies at least some of the conduct at issue in all of the various disciplinary actions, it is well-established that neither a simple denial of the charges against her, nor her own rosier perception of her performance, saves Plaintiff from summary judgment. *See, e.g., Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir. 1991) (noting that fact that employee disagrees with employer's evaluation does not prove pretext), *overruled in part on other grounds, St. Mary's Honor Ctr.,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Leung v. SHK Mgmt., Inc.,* No. CIV.A. 98–3337, 1999 WL 1240961, at *7 (E.D.Pa. Dec.21, 1999) (same). Beyond disputing her own conduct, however, Plaintiff also argues that she was held to a higher standard of care than other RRTs at Liberty. (Pl. Mem. at 3–5, 8, 12; Pl. Aff. at ¶¶ 10, 12, 15, 50). We find that determination of the appropriate standard of care for RRTs at Liberty, and how this standard was applied, are material issues of fact.[2] Moreover, as Plaintiff suggests, there is ample discretion involved in determining when, and what type of, discipline is appropriate. Given the less than clear standard of care, the discretion necessarily involved in the decision to discipline, and the history of litigation between LVH and Plaintiff, we believe that a jury could reasonably find that retaliation was more likely than not a motivating factor in Plaintiff's termination. As a result, we conclude that Plaintiff has met her burden under the second *Fuentes* prong, and therefore, summary judgment is inappropriate. Accordingly, we will deny LVH's Motion.

## CONCLUSION

For the foregoing reasons, we will deny LVH's Motion for Summary Judgment. An appropriate order follows.

## ORDER

AND NOW, this 15th day of February, 2001, upon consideration of Defendant's Motion for Summary Judgment (Document No. 19), and Plaintiff's Responses thereto, it is hereby ORDERED that Defendant's Motion is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's Brief in Opposition (Document No. 23) is DENIED as MOOT.

---

**2.** Notwithstanding the factual dispute over the standard of care and its application, it appears that Plaintiff's reliance on Karen Meloy as a similarly situated RRT is misplaced. As Defendant notes, nothing in the record indicates that Ms. Meloy had a similar disciplinary history like Plaintiff. Barring such evidence, Ms. Meloy cannot be considered similarly situated to Plaintiff. *See Osuala v. Community College of Philadelphia,* No. CIV.A. 00–98, 2000 WL 1146623, at *7 (E.D.Pa. Aug.15, 2000).