GREGORY R., a minor by and through his parents, GREGORY R. and Marion R., and Gregory R. and Marion R., individually and on their own behalf, Plaintiffs,

v.

The PENN DELCO SCHOOL DISTRICT, Defendant.

No. CIV.A. 02–9054.

United States District Court, E.D. Pennsylvania.

April 17, 2003.

Dennis C. McAndrews, Heidi B. Konkkler–Goldsmith, McAndrews Law Offices, Wayne, PA, for Plaintiffs.

Karl A. Romberger, Jr., Fox Rothschild O'Brien & Frankel, Lansdale, PA, for Defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court are the Cross–Motions for Summary Judgment of Defendant Penn Delco School District ("District") and of Plaintiffs Gregory R., a minor by and through his parents, and Marion R. and Gregory R., individually and on their own behalf. In this case, Plaintiffs brought claims for compensatory education, tuition reimbursement and mon-

etary damages for the District's failure to provide a "free appropriate public education" as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.A. §§ 1400 *et seq.* Plaintiffs bring this action under IDEA, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. For the reasons that follow, the Court will grant Defendant's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

## BACKGROUND

Gregory R. is a child with disabilities under the IDEA. He resides with his parents in the Penn Delco school district. In 1995–96, Gregory attended kindergarten and the first half of first grade at a private school. Delaware County Intermediate Unit ("DCIU") had been providing Gregory with speech and language therapy since June 1994.

At the parents' request, the District evaluated Gregory and found him to be eligible for special education services. On November 27, 1996, the District developed an Individualized Educational Program ("IEP") and a Notice of Recommended Educational Placement ("NOREP"). The parents approved the IEP and NOREP and enrolled Gregory for the second half of first grade in a district school, Aston Elementary.

Dissatisfied with Gregory's progress at Aston Elementary, the parents unilaterally placed Gregory in Centreville School, an independent special education day school, at the start of the 1997–98 school year. Gregory attended Centreville School from second grade (1997–98) through sixth grade (2001–02).

On October 31, 2000, the parents contacted the District's director of special education to initiate discussions about middle school. At a meeting on November 28, 2000, the parents orally requested that District support Gregory's tuition at the

Centreville School. On April 25, 2001, the parents made a written request for an evaluation for special education services. Due to inexcusable delay, the District did not prepare and develop an IEP and NOREP until April 18, 2002. On May 14, 2002, the parents rejected the IEP and requested a due process hearing. Until this time, the parents had not expressed any dissatisfaction to the District regarding Gregory's IEP or his education.

At the administrative hearing, the state hearing officer found the proposed IEP inappropriate and granted tuition reimbursement for the 2001–02 school year and 2001 summer school. The hearing officer, however, denied relief prior to the 2001 school year. On November 12, 2002, the state Appeals Panel affirmed the hearing officer's determinations.

Plaintiffs bring this action claiming that federal law in this Circuit justifies granting further relief prior to the 2001–02 school year. Defendant now moves for summary judgment, claiming that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Plaintiffs also filed a motion for summary judgment.

## DISCUSSION

### I. *Legal Standard*

In deciding a motion for summary judgment under Fed.R.Civ.P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999) (internal citation omitted). When making this determination, courts should view the facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g., Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For its part, the non-moving party must, through affidavits, admissions, depositions, or other evidence, demonstrate that a genuine issue exists for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making its showing, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, 106 S.Ct. 1348, and must produce more than a "mere scintilla of evidence in its favor" to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law. *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## II. *Plaintiffs' IDEA Claims*

Plaintiffs allege that the District failed to provide nondiscriminatory and appropriate education under IDEA. Plaintiffs seek tuition reimbursement, compensatory education and monetary damages for the District's alleged violations from September 1996 through June 2001.

### 1. Retroactive Tuition Reimbursement Claim

■ Defendant argues that an equitable time limitation in which to initiate administrative proceedings bars Plaintiffs from additional tuition reimbursement before June 2001. "As a practical reality, and as a matter of procedural law...the right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral placement for which reimbursement is sought. We think more than two years, indeed, more than one year, without mitigating excuse, is an unreasonable delay." *Bernardsville Bd. of Educ. v. J.H.,* 42 F.3d 149, 158 (3d Cir.1994). "Absent initiation of review proceedings within a reasonable time of a unilateral decision to transfer a child to a private institution, a school district would not know to continue to review and revise an IEP." *Id.*

■ The School District issued an IEP on April 18, 2002. Gregory's parents subsequently rejected the IEP and timely requested a due process hearing on May 14, 2002. Before the request for an administrative hearing, the parents had not squarely placed the appropriateness of an IEP in issue. In balancing the equities, however, we find that the District unreasonably delayed the initiation of review proceedings by issuing the IEP approximately one year after the parents made their written request. Because we find the District's dilatory carelessness to be a mitigating excuse, as did the state hearing officer, we agree with the administrative award for tuition reimbursement for the 2001–02 school year and for one year of Extended School Year summer school/tutoring during the 2001–02 school year.

■ Although we find a mitigating excuse, we disagree with Plaintiffs' contention that there are "extraordinary circumstances" that favor extending the tuition reimbursement award back to the 1997–98 school year. Plaintiffs Brief at 42. We also find that any tuition reimbursement award springing from the 1996 IEP would be unreasonable because using the May 2002 hearing to review the appropriateness of the 1996 IEP would clearly be inappropriate and untimely. Therefore, we deny Plaintiffs' claim for further relief in the form of retroactive tuition reimbursement for the school years prior to June 2001.

## 2. Compensatory Education Claim

Plaintiffs argue that *Ridgewood Bd. of Ed. v. N.E. for M.E.*, 172 F.3d 238 (3d Cir.1999) and *M.C. on Behalf of J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389 (3d Cir.1996), provide the proper Third Circuit standard for compensatory education claims. Plaintiffs distinguish between parental rights to tuition reimbursement and a child's right to compensatory education as a result of being deprived of a free appropriate public education. Plaintiffs contend that under *Ridgewood*, Third Circuit precedent does not impose a statute of limitations on a disabled child's compensatory education claim during the child's minority. Defendant maintains that *Bernardsville* continues to control in both tuition reimbursement and compensatory education claims. Even under the standard articulated by *Ridgewood*, however, we find that Plaintiff Gregory is not entitled to compensatory education prior to June 2001.[1]

■ "Under IDEA, a disabled student is entitled to a free appropriate education until the student reaches age twenty-one." *Ridgewood*, 172 F.3d at 249. "An award of compensatory education requires a school district to provide education past a child's twenty-first birthday to make up for any earlier deprivation." *M.C.*, 81 F.3d at 395. Compensatory education, like retroactive tuition reimbursement, requires "school districts to belatedly pay expenses that [they] should have paid all along." *Id.* (quoting *Sch. Comm. of Burlington v. Dep't of Ed.*, 471 U.S. 359, 370–71, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)).

■ "[T]he denial of an appropriate education—and not merely the denial of an appropriate IEP—creates the right to compensatory education." *Ridgewood*, 172 F.3d at 250. "Therefore, a disabled student's right to compensatory education accrues when the school knows or should have known that the student is receiving an inappropriate education." *Id.*

In *Ridgewood*, the Third Circuit remanded to the District Court "to determine whether the child received an appropriate education in each school year, and if it concludes he did not, determine when Ridgewood knew or should have known of that fact." *Ridgewood*, 172 F.3d at 251.

■ Plaintiffs argue that Gregory was denied a free appropriate education because the District violated its "child find" obligations and failed to continually offer IEPs. As a threshold matter, based on a thorough review of the record, we find no showing that Gregory received an inappropriate education during the school years at issue. First, we find that there was no violation of "child find" obligations because Gregory was properly located and evaluated through DCIU and subsequently, through the District's November 27, 1996 IEP. Second, we find that the District did not violate IDEA by failing to continually offer IEPs. Plaintiffs' reliance on *OSEP Memorandum 00–14* is misplaced. Even according to *OSEP Memorandum 00–14*, Question 9, which in turn relies on 34 CFR § 300.536, periodic reevaluation requirements would not apply in this case because "before additional assessments are conducted, parents must give informed consent." Memorandum 00–14 from Kenneth

---

**1.** If we follow *Bernardsville*, as Defendant suggests, then we would reach the same conclusion as our analysis for Plaintiffs' tuition reimbursement claim. Although we examine the compensatory education claim under Plaintiffs' proposed precedent, we decline to comment at this point about whether these Third Circuit decisions have produced ambiguity in the law for compensatory education claims under IDEA because we reach the same determination under either criteria.

R. Warlick, Director of Office of Special Education Programs, to Chief State School Officers (May 4, 2000). In addition, re-evaluations are required "if conditions warrant a reevaluation, or if the child's parent or teacher requests a reevaluation." *Id.* The record does not indicate that the conditions warranted reevaluation, that the parents gave informed consent for reevaluation, or that the parents requested a re-evaluation until April 2001 after initiating discussions for middle school. Therefore, we find that there were no violations of IDEA based on Plaintiffs' "child find" obligation and failure to continue to offer IEP claims.

■ Even assuming *arguendo* that Gregory's education was found inappropriate during the school years in question, we find that the District did not know or should have known of that fact. The District had provided Plaintiffs with an IEP on November 27, 1996 but the parents did not object or complain. The record indicates that the parents unilaterally removed Gregory from the school district at the end of the 1996–97 school year and placed him in a private school. The parents neither challenged the IEP nor indicated that Gregory's education was inappropriate. We note that "mere notice of parental 'dissatisfaction' does not alone put the Board on reasonable notice that the parents will challenge a particular IEP in the future." *Bernardsville,* 42 F.3d at 158. Parents simply claim in their motion that they transferred Gregory because they were dissatisfied with the District's IEP and Gregory's lack of progress. In this case, however, even mere notice of parental dissatisfaction with the 1996 IEP or Gregory's education is conspicuously absent up until the request for a due process hearing in May 2002. The parents' unilateral transfer of the child without a stated reason or any expression of dissatisfaction in any form does not put the District on reasonably adequate notice that it knew or should have known that Gregory was not receiving an appropriate education. Thus, even if Gregory was not receiving an appropriate education, the record does not indicate that the District knew or should have known of that fact. Therefore, we find that the District did not know or should have known that Gregory was receiving an inappropriate education from September 1996 through June 2001.

### 3. Monetary Damages

Since we find no violation of IDEA for the time period at issue, we also deny Plaintiffs' claims for monetary damages. Similarly, we deny the claims under 42 U.S.C. § 1983; 42 U.S.C. § 1985; § 504 of the Rehabilitation Act; and the Fourteenth Amendment of the Constitution.

Therefore, since this Court finds that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law, we will grant Defendant's Motion for Summary Judgment and deny Plaintiffs' Motion for Summary Judgment. Although Plaintiffs' claims after June 2001 are not at issue in this case, we agree with the administrative award granted by the state hearing officer and affirmed by the state appeals panel.

### CONCLUSION

An appropriate Order follows.

### *ORDER*

AND NOW, this 17th day of April, 2003, upon consideration of Defendant Penn Delco School District's Motion for Summary Judgment (Document No. 8) and Plaintiff's Cross–Motion for Summary Judgment (Document No. 11) and the responses thereto, it is hereby ORDERED that, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED as follows:

**494**

1) Defendant's Motion for Summary Judgment is GRANTED; and

2) Plaintiffs' Motion for Summary Judgment is DENIED.

IT IS FURTHER ORDERED that JUDGMENT is ENTERED in the above action for Defendant and against Plaintiffs.