**UNITED STATES FIDELITY AND GUARANTY COMPANY,**

v.

**LEHIGH VALLEY ICE ARENA, INC.,**

**John M. FOX; Philip Wagoner; Paul Getz; Nathan Beil; Michael Toth; Michael Macaulay; Maximillian Sorensen; Matthew C. Smith; John Yorks; Jeffrey Dahlgren; Edward Keegan; Domenico Galati; Daniel Reinert; Dale Howe; Jennifer Lynn Wincer; Brian Wincer; Brandon Murphy; William Cleary; Benjamin Westermann; Andrew Koch, (Intervenors in D.C.),**

Lehigh Valley Ice Arena, Inc.; John M. Fox; Philip Wagoner; Paul Getz; Nathan Beil; Michael Toth; Michael Macaulay; Maximillian Sorensen; Matthew C. Smith; John Yorks; Jeffrey Dahlgren; Edward Keegan; Domenico Galati; Daniel Reinert; Dale Howe; Jennifer Lynn Wincer; Brian Wincer; Brandon Murphy; William Cleary; Benjamin Westermann; Andrew Koch, Appellants.

No. 04–1832.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 11, 2005.

Decided Feb. 18, 2005.

John E. Tyrrell, Hollstein, Keating, Cattell, Johnson & Goldstein, Philadelphia, PA, for Appellee.

George F. Schoener, Jr., Joseph R. Podraza, Jr., Joseph J. McAlee, Sprague & Sprague, Philadelphia, PA, Thomas C. Sadler, Jr., Tallman, Hudders & Sorrentino, Allentown, PA, for Appellants.

Before BARRY, FUENTES, and VAN ANTWERPEN, Circuit Judges.

## OPINION OF THE COURT

VAN ANTWERPEN, Circuit Judges.

Before us is an appeal by Appellant Lehigh Valley Ice Arena ("Lehigh Valley") and several injured parties (acting as intervenors) (collectively "Appellants") from a grant of summary judgment in favor of United States Fidelity and Guaranty Company ("Appellee"). For the reasons below, we affirm the well-reasoned decision of the District Court.

## I. Facts

On September 29, 2002, an intercollegiate hockey game was played at Lehigh Valley's facility, where it is alleged that 19 members of the Millersville University ice hockey team sustained serious pulmonary-related injuries as a result of the inhalation of carbon monoxide, nitrogen dioxide, and other gases emanating from the in-

complete combustion of propane in a malfunctioning Zamboni machine. These gases allegedly passed through the ventilation system of the facility and were released into the locker room used by the Millersville players.[1]

Eighteen members of the team, as well as one spouse, filed suit in the Philadelphia Court of Common Pleas on July 10, 2003, against Lehigh Valley. The remaining hockey player filed a separate action on November 19, 2003. While initially defending Lehigh Valley in both actions, on October 14, 2003, Appellee disclaimed all coverage under the "pollution exclusion" of its insurance agreement with Lehigh Valley, and informed Lehigh Valley that it would cease defending both actions as of December 14, 2003.

On the same date that it disclaimed coverage, Appellee filed a declaratory judgment action in the United States District Court for the Eastern District of Pennsylvania seeking a declaration that it was not obligated to defend or indemnify Lehigh Valley in connection with either state court action. Both Appellee and Lehigh Valley (joined by the intervening injured players) subsequently filed cross motions for summary judgment. On March 3, 2004, the District Court granted Appellee's Motion for Summary Judgment and denied Appellants' Cross-Motion for Summary Judgment. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. Our jurisdiction is pursuant to 28 U.S.C. § 1291.

Our review of the District Court's grant of summary judgment is *de novo*. *See Curley v. Klem*, 298 F.3d 271, 276 (3d Cir.2002). We will affirm as long as there were no genuine issues of material fact

before the District Court and the moving party was entitled to judgment as a matter of law. *See id.* at 276 (quoting Fed. R.Civ.P. 56(c)).

## III. Discussion

It is undisputed that this insurance contract should be interpreted according to Pennsylvania law. A court interpreting an insurance contract must "ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins.*, 503 Pa. 300, 469 A.2d 563, 566 (Pa.1983). If an insurance policy provision is ambiguous, it will be construed against the insurer and in favor of the insured party. *State Farm Fire & Cas. Co. v. MacDonald*, 850 A.2d 707, 710 (Pa.Super.Ct.2004). An ambiguity exists if a provision, when viewed in the context of the entire policy, is "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (quoting *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997)) (internal quotations marks omitted). Where, however, "the language of an insurance contract is clear and unambiguous, a court is required to enforce that language." *Id.* at 103 (citing *Standard Venetian Blind*, 469 A.2d at 566).

Appellants contend that the District Court erred in concluding that the injuries underlying this action fell outside the coverage provided by the insurance agreement between Appellee and Lehigh Valley. Specifically, they contend that the District Court erred in finding that (1) no exception to the pollution exclusion applied, (2) the policy was unambiguous as a matter of law, and (3) the doctrine of reasonable

---

1. The injured players also alleged that they were exposed to these gases while on the ice.

expectations was inapplicable to the instant case.

Turning first to whether there is an applicable exception to the general pollution [2] exclusion, we conclude that the pollution exclusion applies without exception to the instant case. Section I(2)(f)(1)(a) reads:

This insurance does not apply to ... "[b]odily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" ... [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

There is no dispute that (a) bodily injury arose (b) out of the discharge of pollutants (carbon monoxide and nitrogen dioxide) (c) at the Lehigh Valley ice rink. Section I(2)(f)(1)(a) is thus applicable. Furthermore, the section I(2)(f)(1)(a)(i) exception to the section I(2)(f)(1)(a) exclusion is not applicable. Section I(2)(f)(1)(a)(i) reads:

[However, this subparagraph does not apply to] "[b]odily injury" if sustained within a building and caused by smoke, fumes, vapor or soot *from equipment used to heat that building.*

(emphasis added). As the District Court concluded, it is clear that, in order for this exception to be applicable, the heating system itself must have caused the pollution. The rink's heating system did not release the injurious pollutants—it merely served, as described by the District Court, as a "conduit." We acknowledge that the Appellant-intervenors' complaints plead that the installation of a dimensionally incorrect filter in the heating system allowed the pollutants to become concentrated within

the locker room. However, this allegation is of no moment because it does not address the predicate of section I(2)(f)(1)(a)(i), namely that the equipment used to heat the rink was the source of the injurious pollution. No party has suggested that the pollutants were caused by the heating system. As such, the section I(2)(f)(1)(a)(I) exception is inapplicable.

We further conclude that there is no ambiguity between section I(2)(f)(1)(a) and section I(2)(f)(1)(d), as section I(2)(f)(1)(d) is inapplicable to the instant case. Section I(2)(f)(1)(d) reads, in relevant part:

This insurance does not apply to ... "[b]odily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" ... [a]t or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations *if the "pollutants" are brought on or to* the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

(emphasis added). It is not alleged anywhere that the complained-of pollutants, carbon monoxide and nitrogen dioxide, were brought onto the premises. Rather, propane was brought onto the premises, and thereafter underwent a chemical reaction that converted the propane to carbon monoxide and nitrogen dioxide. Therefore, it is more accurate to say that these two pollutants were created onsite, rather than brought on or to the premises. We find the reasoning of *Madison Construct. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100 (1999), persuasive on this point. In that case, the Supreme Court of

---

**2.** It is undisputed that carbon monoxide and nitrogen dioxide are considered "pollutants"

under the contract.

Pennsylvania was confronted with a situation where an insured party brought concrete sealer onto its property, and the resultant fumes caused a worker to faint and collapse. The insured party claimed that it was covered for the resulting injuries, since it had not brought the fumes that caused the injury onto the premises. That court disagreed, concluding

> [w]e find no merit in Madison's claim that the pollutant in this case consisted solely of the fumes released by the application of Euco Floor Coat to the cement, and that what Madison "brought on ... to the premises" ... was not the pollutant (that is, the fumes themselves) but a non-polluting substance (Euco Floor Coat) in sealed containers. As Harleysville points out, while the form of the substance may have changed, its chemical composition did not. Given that fact ... Madison avers a distinction without a difference.

*Id.* at 107. The instant case is the opposite of *Madison:* here, the propane brought onto the premises by Lehigh Valley was chemically distinct from what eventually caused the underlying injuries. It therefore was not brought onto the premises. We think that, had section I(2)(f)(1)(d) been intended to also cover any byproducts or exhaust that might result from negligent decomposition (or for that matter, negligent combination) of substances brought onto the premises, it would be easy to add such a clause to the insurance contract. Because section I(2)(f)(1)(d) is an unambiguous exclusion, we will not read into it additional provisions, as Appellants invite us to do. Section I(2)(f)(1)(d), and all of its accompanying exceptions, are therefore inapplicable. Thus, the interplay between section I(2)(f)(1)(a) and section I(2)(f)(1)(d) does not produce an ambiguity.

Finally, we conclude that the District Court's interpretation of this insurance policy, a contract plain on its face, does not run afoul of what Lehigh Valley should reasonably have expected its coverage to be. The court in *Madison* noted that the reasonable expectations doctrine protects non-commercial insureds from policy terms not readily apparent and is intended to protect such non-commercial insureds from deception. *Madison,* 735 A.2d at 109 n. 8. Clearly, Lehigh Valley is a commercial insured—not the type of insured this doctrine was envisioned to protect. Even assuming *arguendo* that it was, the doctrine does not provide relief where the language of a contract is clear and unambiguous. *See Frain v. Keystone Insurance Co.,* 433 Pa.Super. 462, 640 A.2d 1352, 1354 (1994). We have already determined that the insurance contract contains no ambiguity that we may twist to benefit Appellants. Therefore, we agree with the District Court that the doctrine of reasonable expectations is inapplicable to the instant case.

For the foregoing reasons, we affirm the decision of the District Court.